# UNITED STATES *v.* HOPKINS, SPECIAL ADMINISTRATOR

No. 75–246.   Argued April 19–20, 1976—Decided June 24, 1976

*Robert B. Reich* argued the cause *pro hac vice* for the United States.  With him on the briefs were *Solicitor*

General Bork, Assistant Attorney General Lee, and Ronald R. Glancz.

Thomas H. McGrail argued the cause and filed a brief for respondent.

PER CURIAM.

This case involves a suit by respondent's decedent,[1] a civilian employee of the Army and Air Force Exchange Service (AAFES), claiming wrongful discharge from his employment. He asserted jurisdiction under the Tucker Act, 28 U. S. C. § 1491, which provides for suits in the Court of Claims upon any express or implied contract with such military exchanges. The Government moved to dismiss for lack of jurisdiction. The Court of Claims concluded that it had jurisdiction because respondent's decedent's relationship with the AAFES was based upon an implied contract of employment and such a contract is covered, since 1970, by the Tucker Act. 206 Ct. Cl. 303, 513 F. 2d 1360. We granted certiorari to resolve a conflict between this decision and a contrary holding of the United States Court of Appeals for the Fifth Circuit in Young v. United States, 498 F. 2d 1211 (1974). 423 U. S. 821.

The status of claims against military post exchanges has been in some doubt since the decision of this Court in Standard Oil Co. v. Johnson, 316 U. S. 481 (1942). There the Court, in striking down a state tax on the distribution of motor fuel by Army post exchanges, held that such exchanges "are arms of the Government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department . . . ." However, the Court also observed that the "Government assumes none of the financial obligations of the exchange." Id., at 485.

---

[1] The named respondent is the widow of the original plaintiff.

The latter observation was the basis of a series of decisions by the Court of Claims to the effect that it lacked jurisdiction over claims concerning the activities of nonappropriated fund instrumentalities.[2] That court held that it could not entertain suits based on a contract for services with such an entity, because, since the Government had assumed no liability for the entity's financial obligations it could not be said to have consented to a suit designed to vindicate such obligations. Therefore, no "claim against the United States" existed under the Tucker Act which is the source of Court of Claims jurisdiction, *Borden* v. *United States*, 126 Ct. Cl. 902, 116 F. Supp. 873 (1953); *Pulaski Cab Co.* v. *United States*, 141 Ct. Cl. 160, 157 F. Supp. 955 (1958); *Kyer* v. *United States*, 177 Ct. Cl. 747, 369 F. 2d 714 (1966), cert. denied, 387 U. S. 929 (1967).

The Court of Claims, while denying jurisdiction, recognized the harsh consequences of this result since it could leave claimants against the exchanges with no forum in which to seek relief. However, the court recognized that "it is up to Congress to remedy this apparent harsh result . . . . [T]he courts should refrain from legislating by judicial fiat." *Keetz* v. *United States*, 168 Ct. Cl. 205, 207 (1964).

In 1970 Congress amended the Tucker Act and provided:

> "For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service . . . shall be considered an express or implied contract with the United States." Pub. L. 91–350, 84 Stat. 449.

---

[2] A "nonappropriated fund instrumentality" is one which does not receive its monies by congressional appropriation. See 10 U. S. C. §§ 4779 (c), 9779 (c).

The purpose of this amendment, as the reports of both Houses made clear, was to afford contractors a federal forum in which to sue nonappropriated fund instrumentalities by doing away with the inequitable "loophole" in the Tucker Act. S. Rep. No. 91–268, p. 2 (1969); H. R. Rep. No. 91–933, p. 2 (1970). *Borden, supra; Pulaski, supra; Keetz, supra;* and *Kyer, supra,* were cited as examples of the "harsh result" which the amendment would correct. The purpose of the bill was clearly to provide a remedy to "contractors" with nonappropriated fund instrumentalities, *e. g.,* S. Rep. No. 91–268, pp. 4–5, and there is nothing in the legislative history to indicate, as the Government contends, that "contractors" did not include anyone who had formed a contractual employment relationship. Since the statute applies, by its terms, to "any express or implied contract" we hold that it is applicable to employment contracts as well as those for goods or other services. The fact that Congress has dealt specifically with exchange employees when it wanted to bring them within or leave them without the provisions of a law dealing with federal employees generally (*e. g.,* 5 U. S. C. § 8171 (b)) is not of controlling weight here. This statute deals with those who have a contractual relationship with military exchanges rather than with different classes of federal employees. If employees of military exchanges are within its general language, they are not removed from its effect by congressional practices in enacting other kinds of statutes.

The Government alternatively contends that AAFES employees do not have a contractual relationship with their employer, and that like orthodox federal employees they serve by "appointment" to a particular position. While there is some ambiguity in the opinion of the Court of Claims, that court apparently agreed that plain-

tiff and others like him did have a contractual employment relationship with the AAFES. We think it would be both unnecessary and unwise for us to decide the question at this stage of the case, and we think that the Court of Claims gave insufficient attention to applicable administrative regulations when it undertook to decide the question.

The exchange services are created and administered pursuant to the general authority granted the Secretary of the Army and the Secretary of the Air Force by 10 U. S. C. §§ 3012 and 8012. The nonappropriated-fund status of the exchanges places them in a position whereby the Federal Government, absent special legislation, does not assume the obligations of those exchanges in the manner that contracts entered into by appropriated fund agencies are assumed. *Standard Oil Co.* v. *Johnson,* 316 U. S., at 485. The nonappropriated-fund status of the exchanges, however, does not alter the fact that the Secretaries of the Army and the Air Force may engage employees by "appointment," in the same manner as other personnel hired by the Secretaries may be employed. See *Standard Oil Co.* v. *Johnson, supra; Crenshaw* v. *United States,* 134 U. S. 99 (1890); *Butler* v. *Pennsylvania,* 10 How. 402 (1851).

The regulations governing the AAFES, state that ordinary employees are deemed employees of an instrumentality of the United States, and hold their positions by *appointment.* AR 60–21/AFR 147–15, c. 1, § I, ¶ 1–7; c. 2, § I (Nov. 12, 1974).[3] There is congressional recogni-

---

[3] Except where otherwise noted, the regulations cited are those presently in effect. These differ in some respects from the regulations in effect at the time of respondent's decedent's hiring and at the time of his discharge. On remand it will be necessary for the Court of Claims to determine which regulations are applicable to this case.

tion of the power of the Secretaries to employ exchange employees by appointment. The House and Senate Reports on Pub. L. 91–350 explicitly recognized that employees of nonappropriated-fund activities, when performing their official duties, are employees of the United States. S. Rep. No. 91–268, *supra*, at 2; H. R. Rep. No. 91–933, *supra*, at 2. Further, Congress has specifically granted exchange employees certain rights afforded only appointed employees, and, more important, has specifically excluded them from the coverage of certain statutes granting rights to appointed federal employees. See statutes cited in AR 60–21/AFR 147–15, c. 1, § I, ¶ 1–8. Of particular import is their exclusion, through the operation of 5 U. S. C. § 2105 (c), from the provisions of the Back Pay Act, 5 U. S. C. § 5596. The Back Pay Act is the means by which appointed employees subjected to unjustified personnel action are given a cause of action against the United States. The Act is made necessary by the fact that, absent specific command of statute or authorized regulation, an appointed employee subjected to unwarranted personnel action does not have a cause of action against the United States. *Keim* v. *United States*, 177 U. S. 290, 293–296 (1900); *Sampson* v. *Murray*, 415 U. S. 61, 69–70 (1974); *United States* v. *Testan*, 424 U. S. 392, 405–407 (1976). Since the Act deals only with appointees, the specific exclusion of AAFES employees from the coverage of the Act would seem to indicate a congressional recognition that they may be appointed, but that appointed AAFES employees should not be allowed to sue under the Act.

This is not to say that an exchange may never employ a person pursuant to a contract of employment. The Secretaries have provided, by separate regulation, for a process under which a person may be employed by contract. AR 60–20/AFR 147–14, c. 4, §§ II and III

(Mar. 21, 1974). Such employment is subject to different procedures for negotiation, approval, and administrative remedies from those applicable to employment under AR 60–21/AFR 147–15. The regulation governing contracts defines "service contract" as including contracts both for services performed off a military installation and "direct services such as janitorial and window cleaning service." AR 60–20/AFR 147–14, App. A, ¶ A–6e. Under the regulation in effect at the time of plaintiff's discharge, it was specifically provided that exchanges "will not enter into [a service contract] with military personnel on active duty, civil service employees, *or exchange employees.*" AR 60–20/AFR 147–14, § XIX, ¶ 88b (Apr. 14, 1965) (emphasis added). The regulation thus clearly distinguished between employment pursuant to appointment and employment pursuant to contract, a distinction that existed prior to plaintiff's hiring and continues today in the use of separate regulations for "contracting" and "appointment."

When Congress enacted Pub. L. 91–350, making contracts entered into by the post exchanges cognizable in the Court of Claims, it did not change in any way the other provisions of the United States Code dealing with exchange employees, nor did it purport to require that the exchanges employ all persons pursuant to contract.

The Court of Claims, in reaching its conclusion that plaintiff held his position by virtue of an express or implied contract assumed that once it was determined he was not an appointed federal employee this result followed as a matter of course. It concluded that in such event his employment status was governed by a series of cases from the private sector of the economy holding that the typical employee-employer relationship was contractual in nature. While we do not question the relevance of these cases by way of analogy should plaintiff

be determined not to have been an appointee we hold that the Court of Claims erred in its threshold determination that AAFES employees could *never* serve by appointment. Rather, the question depends upon an analysis of the statutes and regulations previously described in light of whatever evidence is adduced on remand as to plaintiff's particular status in this case.

It is thus apparent that the question of whether plaintiff was employed by virtue of a contract or by appointment is not susceptible of determination at this time. Rather, the issue is one which must receive additional consideration from the Court of Claims after development of a fuller record.

Respondent in her brief in this Court advanced a second theory upon which the jurisdiction of the Court of Claims in this case could be sustained. She urged that plaintiff's discharge in violation of executive regulations constituted a claim enforceable under the Tucker Act, and that his discharge without due process constituted a claim founded on the Constitution and therefore enforceable under the Tucker Act. Brief for Respondent 51. At oral argument, counsel conceded that our decision in *United States* v. *Testan, supra,* which had been handed down between the time of the filing of his brief and the oral argument, foreclosed such a claim.

Plaintiff's allegation that his discharge constituted a breach of a contract of employment was sufficient, under the provisions of Pub. L. 91–350, to withstand the Government's motion to dismiss the complaint on the grounds of lack of jurisdiction in the Court of Claims, and the judgment of the court so holding is therefore affirmed. That portion of its judgment deciding that plaintiff held his employment position by virtue of an express or implied contract, rather than by appointment,

is vacated and the cause remanded for further proceedings on that question.

*It is so ordered.*

MR. JUSTICE POWELL dissents from the opinion of the Court substantially for the reasons stated by Judge Skelton in his dissenting opinion in the Court of Claims. 206 Ct. Cl. 303, 314, 513 F. 2d 1360, 1366 (1975).