**RESEARCH TRIANGLE INSTITUTE, Plaintiff,**

v.

**BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, and The United States of America, Defendants.**

**Civil No. 1:96CV102.**

United States District Court, M.D. North Carolina, Durham Division.

Feb. 14, 1997.

Robinson O. Everett, Everett & Everett, Durham, NC, Grace C. Boddie, Research Triangle Institute, Research Triangle Park, NC, for plaintiff.

Bradford S. Fleetwood, Washington, DC, for Bd. of Governors of the Federal Reserve System.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, for defendant U.S.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

Plaintiff Research Triangle Institute ("RTI") filed this action against the Board of Governors of the Federal Reserve System ("Board") and the United States of America seeking reimbursement for unforeseen costs Plaintiff incurred while performing a firm fixed price contract it entered with the Board. This matter is now before the court on Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth hereafter, the court will grant Defendants' motion to dismiss for lack of subject matter jurisdiction, making it unnecessary to consider whether Plaintiff has stated a claim upon which relief can be granted.

## FACTS

The Board is a seven member federal agency established under the Federal Reserve Act, 12 U.S.C. § 221 *et seq.*, to supervise and regulate the banks that comprise the Federal Reserve System. On November 3, 1987, the Board issued a Request for Proposal ("RFP") to solicit bids for a survey to determine the institutional sources and geographic areas from which small businesses obtain financial services. The RFP contained performance specifications and a suggested survey design for conducting interviews of selected small businesses.

Plaintiff RTI, a non-profit corporation organized by the University of North Carolina at Chapel Hill, Duke University, and North Carolina State University to examine complex research issues in various scientific, technical, and social subjects, was one of the bidders that submitted a proposal to the Board. On February 2, 1988, the Board awarded Plaintiff a firm fixed price contract for $572,763 to conduct the research survey.[1] This contract was awarded to Plaintiff based on its cost proposal as well as its 29 years of contract research experience. Plaintiff completed the survey in September 1989 but was unable to meet the targets included in the contract's performance specifications. Nonetheless, the Board paid Plaintiff the full contract price.

Prior to the completion of the contract, Plaintiff submitted a written request on May 24, 1989, to the Board's contracting officer for an equitable adjustment of $284,079. After this request was denied, Plaintiff unsuccessfully appealed the decision to the Board. The equitable adjustment request now serves as the basis for the action before this court. Defendants maintain that this court does not have subject matter jurisdiction to hear this dispute because of the sovereign immunity doctrine. Defendants also contend that Plaintiff assumed the risk of any unanticipated costs after agreeing to a firm fixed price contract. Finally, Defendants assert that all of the changes in the contract for

---

1. Although the original contract price was $572,763, four modifications to the contract increased the price to $615,851. The modifications increased the length of each interview, increased the number of questions and interviews, allowed the Board to work closely with RTI in developing the questionnaire, eliminated some of the performance specifications, and extended the contract deadline.

which Plaintiff now seeks compensation were accounted for in the contract modifications agreed to by both parties.

## DISCUSSION

In an action against the United States or one of its agencies, a federal court may not exercise jurisdiction absent a clear waiver of sovereign immunity. *Federal Deposit Insurance Co. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994); *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980). A waiver of immunity must be unequivocally expressed by Congress in the statutory text and "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, —— U.S. ——, ——, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996). The party bringing suit against the federal government or its agencies bears the burden of directing the court to such a clear and explicit waiver. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995).

In this case, therefore, the court begins its analysis with the premise that sovereign immunity shields the United States and the Board from suit. Congress has waived sovereign immunity for some contract claims against the federal government and its agencies under the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 *et seq.* However, as Plaintiff correctly notes, neither of these statutes applies to the Board. Under both the Tucker Act and the CDA, Congress has restricted the Federal Claims Courts' jurisdiction to contractual obligations paid out of appropriated funds with certain limited exceptions.[2] Because Congress has provided that the Board's funds "shall not be construed to be Government funds or appropriated moneys,"

12 U.S.C. § 244,[3] these statutes would act as a waiver of the Board's immunity only if the Board fell within the narrow class of exceptions. The limited exceptions in which Congress has waived sovereign immunity for contractual obligations paid out of nonappropriated funds, however, include only the military exchanges enumerated in section 1491(a)(1) of the Tucker Act. Thus, Congress did not expressly waive the Board's sovereign immunity in the Tucker Act or the CDA.

Although the Board does not fall within the jurisdiction of either the Tucker Act or the CDA, Plaintiff contends that it is unnecessary for this court to shield NAFI's from suit under the sovereign immunity doctrine because these entities would not expend public money to satisfy judgments awarded against them. With regard to whether immunity is needed to protect the Board, the Supreme Court has recognized that "it is not for this Court to examine the necessity in each case. That is a function of Congress." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949).

An examination of the legislative history surrounding the 1970 amendment to the Tucker Act indicates that Congress did not intend to waive sovereign immunity in all contract actions involving NAFI's. The House Judiciary Committee rejected such a proposal because "the complete removal of sovereign immunity for all non-appropriated fund activities would be undesirable." H.R.Rep. No. 933, 91st Cong., 2d Sess. 1–5 (1969), *reprinted in*, 1970 U.S.C.C.A.N. 3477, 3477–79. Accordingly, Congress did not waive sovereign immunity in contract actions involving the Board, a NAFI not expressly

---

**2.** Under 28 U.S.C. § 2517(a), judgments rendered by the United States Courts of Federal Claims must be paid out of appropriated funds. Thus, with the exception of military exchanges pursuant to amendment, the Tucker Act only waives sovereign immunity for contract actions that may obligate appropriated funds. *McDonald's Corp. v. United States*, 926 F.2d 1126, 1129 (Fed.Cir.1991); *see also United States v. Hopkins*, 427 U.S. 123, 126, 96 S.Ct. 2508, 2510–11, 49 L.Ed.2d 361 (1976) (recognizing that the purpose of the 1970 amendment to the Tucker Act was to provide a remedy to those who con-

tract with the nonappropriated fund instrumentalities ("NAFI") listed in 28 U.S.C. § 1491). In the CDA, Congress elected to limit jurisdiction over NAFI's in the Federal Claims courts to the extent allowed under the Tucker Act. *See* 41 U.S.C. § 602(a).

**3.** A federal agency that does not receive money by congressional appropriation is classified as a NAFI. *Hopkins*, 427 U.S. at 125 n. 2, 96 S.Ct. at 2510 n. 2.

enumerated in the amendment to the Tucker Act. *See Wolverine Supply, Inc. v. United States,* 17 Cl.Ct. 190, 192–93 n. 4 (1989) ("An analysis of the complete legislative history of the 1970 amendment to 28 U.S.C. § 1491 makes it clear that Congress intended that sovereign immunity was to remain as to all nonappropriated fund instrumentalities except for military exchanges....").

■ Because Congress did not intend to waive sovereign immunity in all contract claims against NAFI's under either the Tucker Act or the CDA, this court must apply the sovereign immunity doctrine unless Plaintiff is able to ·direct the court to an unequivocal waiver of the Board's immunity by Congress.[4] In this case, Plaintiff has failed to bring such a waiver to the court's attention.

■ Plaintiff contends that federal question jurisdiction is proper in this court based on 28 U.S.C. § 1331 and 12 U.S.C. § 632. However, neither of ·these provisions unequivocally waives sovereign immunity in contract actions against the federal government and its agencies. First, with regard to 28 U.S.C. § 1331, "[t]he federal question jurisdictional statute is not a general waiver of sovereign immunity; it merely establishes a subject matter that is within the competence of federal courts to entertain." *Whittle v. United States,* 7 F.3d 1259, 1262 (6th Cir. 1993). Second, 12 U.S.C. § 632 cannot provide a basis for federal question jurisdiction because the statute grants federal district courts original jurisdiction only in suits to which any Federal Reserve Bank is a party. Here, Plaintiff has instituted its action against the Board, an entity clearly separate from the Federal Reserve Banks ("Banks").

Plaintiff argues that its contract with the Board is, in essence, a contract with the collective Banks subject to 12 U.S.C. § 632. Plaintiff comes to this conclusion by reason-

ing that the Board acts as an agent for the Banks by committing funds of the twelve Banks when it executes contracts. *See id.* § 243 (authorizing the Board to levy assessments upon the Banks to pay expenses). However, the Federal Reserve Act clearly contemplates treating the Board and the Banks as distinct entities by defining them separately. *Id.* § 221. Furthermore, Congress explicitly waived sovereign immunity for the Banks by providing "sue and be sued" authority when outlining the Banks' powers. *Id.* § 341. When enumerating the powers and authority of the Board, by contrast, Congress did not provide any similar language. *See id.* § 248. Consequently, Plaintiff's attempt to include the Board in the congressional waiver of the Banks' sovereign immunity is without merit, and this court does not have subject matter jurisdiction over the Board.

## CONCLUSION

For the reasons stated above, the court will grant Defendants' motion to dismiss for lack of subject matter jurisdiction.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## *ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants' motion to dismiss [# 5] is **GRANTED,** and this civil action be, and the same hereby is, **DISMISSED.**

---

4. Plaintiff asserts that the General Counsel to the Board waived the sovereign immunity defense in a May 15, 1990, letter to RTI stating that "[i]f you wish to pursue your claim, you may file a complaint with the appropriate federal district court." (Pl.'s Br. Opp'n to Mot. to Dismiss Ex. P.) However, "[i]t is well established that the United States cannot be sued without its specific statutory consent and that no government officer

by his action can confer jurisdiction otherwise lacking." *Champaign–Urbana News Agency, Inc. v. J.L. Cummins News Co.,* 632 F.2d 680, 687 (7th Cir.1980). *See also Wolverine Supply,* 17 Cl.Ct. at 193 n. 7 (noting that a contracting officer did not have authority to waive congressional limitations on the court's jurisdiction). Thus, this statement is insufficient to waive the Board's sovereign immunity.