**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RESEARCH TRIANGLE INSTITUTE,
Plaintiff-Appellant,

v.

THE BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM, consisting
of Alan Greenspan in his official
capacity as chairman, and Edward

W. Kelley, Jr., Lawrence B.
Lindsey, Susan M. Phillips and
Janet L. Yellen in their capacities as
members of the Board of
Governors; UNITED STATES OF
AMERICA,
Defendants-Appellees.

No. 97-1282

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., Chief District Judge.
(CA-96-102-1)

Argued: October 30, 1997

Decided: December 29, 1997

Before RUSSELL, NIEMEYER, and WILLIAMS, Circuit Judges.

_____

Affirmed by published opinion. Judge Russell wrote the opinion, in
which Judge Niemeyer and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Robinson Oscar Everett, EVERETT & EVERETT, Durham, North Carolina, for Appellant. Bradford Scott Fleetwood, Senior Attorney, Washington, D.C., for Appellee Board of Governors; Gill Paul Beck, Assistant United States Attorney, Greensboro, North Carolina, for Appellee United States. **ON BRIEF:** Sandra G. Herring, EVERETT & EVERETT, Durham, North Carolina, for Appellant. James V. Mattingly, Jr., General Counsel, Richard M. Ashton, Associate General Counsel, Katherine H. Wheatley, Assistant General Counsel, Washington, D.C., for Appellee Board of Governors; Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee United States.

_____

**OPINION**

RUSSELL, Circuit Judge:

This appeal presents a single question of law: whether the Board of Governors of the United States Federal Reserve System (the "Board") can be sued in contract in federal court. The district court found that the doctrine of sovereign immunity shielded the Board from contract suits in federal court and dismissed this case for lack of subject matter jurisdiction. Because we can find neither an express waiver of sovereign immunity in the Board's governing statutes nor the Board's inclusion in a more general Congressional waiver of immunity, we agree with the district court's finding, and affirm its dismissal of the case.

I.

A.

Appellant Research Triangle Institute ("RTI") is a nonprofit scientific research organization headquartered in Research Triangle Park, North Carolina. RTI sued the Board in the United States District Court for the Middle District of North Carolina, seeking reimbursement for unforeseen costs incident to a contract that required RTI to

2

perform a survey of the institutions and geographic areas from which small businesses obtain financial services. The fixed contractual price for RTI's services was $572,763, but in May of 1989, nearly a year after the contract was awarded, RTI sought an equitable adjustment in the amount of $284,079. The Board denied the adjustment in February 1990, and RTI brought suit. On February 14, 1997, the district court dismissed the case for lack of subject matter jurisdiction.[1] This appeal followed.

B.

As stated above, the district court dismissed this case for lack of subject matter jurisdiction based on its finding that the doctrine of sovereign immunity protected the Board from suit. Because the existence of sovereign immunity is a question of law, we review this determination de novo.[2]

With regard to the federal government and its instrumentalities, sovereign immunity is presumed and cannot be overcome without an express and unequivocal statutory waiver.[3] Further, any statutory waiver is strictly construed, with all ambiguities resolved in favor of the sovereign.[4]

The jealous protection of the sovereign from suit is deeply rooted in the common law[5] and has been considered a part of the plan of our Constitution since before its ratification. In arguing for the Constitution's organization of the judicial branch, Alexander Hamilton wrote that "[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent ,"[6] and further inferred

_____

[1] **Research Triangle Inst. v. Board of Governors**, 962 F. Supp. 61 (M.D.N.C. 1997).
[2] **Mulcahey v. Columbia Organic Chems. Co.**, 29 F.3d 148, 151 (4th Cir. 1994).
[3] **Lane v. Pena**, 116 S. Ct. 2092, 2096 (1996).
[4] **Id.**
[5] **See Chisholm v. Georgia**, 1 U.S. 16, 26-34 (1793) (Iredell, J., tracing the doctrine of sovereign immunity forward from the time of Edward I).
[6] **The Federalist** No. 81, at 511 (Alexander Hamilton) (Benjamin F. Wright ed., 1961) (emphasis original).

from this precept that "[t]he contracts between a nation and individuals are only binding on the conscience of the sovereign, and have no pretensions to a compulsive force."**7** In <u>Kawananakoa v. Polyblank</u>,**8** Justice Holmes reaffirmed the doctrine of sovereign immunity "not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends."**9**

More recently, the Supreme Court emphasized the strict requirements for a waiver of this immunity, stating that such a waiver "must be unequivocally expressed in [the] statutory text,"**10** and that, as stated above, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."**11** In addition, the Court has also interpreted this broad measure of protection as extending not only to more traditional governmental entities, but to <u>all</u> agencies of the federal government.**12**

A waiver of federal sovereign immunity can be found in one of two places: in the specific statute governing a governmental entity, or in one of the broad waivers of immunity made by Congress for certain classes of federal agencies. The Tucker Act**13** and the Contract Disputes Act**14** are examples of the latter type of waiver. In each statute, Congress explicitly waived sovereign immunity with regard to contract actions against certain federal agencies and placed jurisdiction over those actions in the United States Court of Federal Claims. However, unless these statutes specify otherwise, they apply only to agencies that operate using appropriated funds, and as a result they do not waive immunity from contract actions for all agencies.**15**

_____

**7 <u>Id.</u>**
**8** 205 U.S. 349 (1907).
**9 <u>Kawananakoa v. Polyblank</u>**, 205 U.S. 349, 353 (1907).
**10 <u>Lane</u>**, 116 S. Ct. at 2096.
**11 <u>Id.</u>**
**12 <u>See</u>**, <u>e.g.</u>, <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994).
**13** 28 U.S.C.A. §§ 1491-1509 (1994 & West Supp. 1997).
**14** 41 U.S.C.A. §§ 601-13 (1987 & West Supp. 1997).
**15** The relevant section of the United States Code states in part that "[e]very final judgement rendered by the United States Court of Federal

4

II.

A.

In arguing that the Board is subject to a waiver of sovereign immunity, RTI first relies on the Tucker Act case of McDonald's Corp. v. United States.**16** In McDonald's, an independent contractor sued the Navy Resale and Services Support Office ("NAVRESSO"), an agency responsible for supervising certain aspects of the Navy's exchanges, for breach of contract. The Claims Court dismissed for lack of jurisdiction, stating that the Tucker Act did not expressly include NAVRESSO's predecessor agency within its waiver of sovereign immunity for the nation's military exchanges. The United States Court of Appeals for the Federal Circuit disagreed, holding that the Tucker Act's waiver of immunity included NAVRESSO because NAVRESSO's supervisory activities fell "within the ambit of `a post exchange type of operation.'"**17**

_____

Claims against the United States shall be paid out of any general appropriation therefor . . . ." 28 U.S.C.A. § 2517 (West Supp. 1997). This provision is generally read as limiting Tucker Act claims to contracts "which could have been satisfied out of appropriated funds." Kyer v. United States, 369 F.2d 714, 718 (Ct. Cl. 1966). In United States v. Hopkins, 427 U.S. 123 (1976), the Supreme Court considered a contract action against the Army and Air Force Exchange Service ("AAFES"), a "non-appropriated fund instrumentality," that was brought within the scope of the Tucker Act's waiver of sovereign immunity by an express amendment, now part of 28 U.S.C. § 1491(a)(1). The Court held that the amendment was clearly designed "to afford contractors a federal forum in which to sue nonappropriated fund instrumentalities [the military exchanges] by doing away with the inequitable `loophole' in the Tucker Act," id. at 126 (internal citations omitted), and affirmed jurisdiction. Nevertheless, the Court left undisturbed the general "appropriated fund instrumentality" limitation on the Tucker Act's grant of jurisdiction. As for the Contract Disputes Act, the only non-appropriated fund activities it contemplates are those "described in sections 1346 and 1491 of Title 28." 41 U.S.C.A. § 602(a) (West 1994).

**16** 926 F.2d 1126 (Fed. Cir. 1991).
**17** **McDonald's Corp. v. United States**, 926 F.2d 1126, 1133 (Fed. Cir. 1991) (quoting S. Rep. No. 91-259, at 2 (1969)).

RTI relies upon McDonald's for the purpose of drawing a parallel. RTI argues that, just as NAVRESSO was brought within the pale of the Tucker Act's waiver of immunity for Navy exchanges because of its close association with that entity, the Board, for which there is no express statutory waiver of immunity, should be included within the waiver for the Federal Reserve banks provided by 12 U.S.C. § 341. We disagree.

McDonald's inclusion of NAVRESSO in the Tucker Act's waiver of sovereign immunity for Navy exchanges is patently distinguishable from RTI's argument that the Board should be included in the statutory waiver of immunity as to federal reserve banks. As McDonald's made clear, NAVRESSO is an entity established by the Navy itself, as well as one whose organization and function has changed as the Navy exchange system has evolved.[18] By contrast, the Board has an expressly independent statutory existence from the Federal Reserve banks it oversees. Subchapter II of 12 U.S.C. mandates the creation of the Board, and enumerates its powers,[19] which, the Board notes, primarily involve the regulation of the "member" banks of the Federal Reserve System and the establishment of general monetary policy. There is no mention of any ability to sue or be sued with regard to the Board in Subchapter II. However, separate subsequent subchapters and the sections therein deal with the creation of the independent Federal Reserve banks and establish their powers, including the power "[t]o make contracts" and "[t]o sue and be sued, complain and defend, in any court of law or equity."[20]

Thus, in attempting to equate this situation with McDonald's, RTI asks us to conflate the powers of two expressly independent statutory entities. This we are unwilling to do, and therefore hold that RTI's argument is unavailing.

B.

Additionally, RTI contends that the Tucker Act's waiver of sover-

_____

18 **Id.** at 1127-28.
19 12 U.S.C.A. §§ 241-250 (1987 & West Supp. 1997).
20 **Id.** at § 341 (West 1987).

eign immunity should extend to the Board. RTI asserts that, because the Board's governing statutes do not explicitly preclude Congress from funding the Board in an emergency, the Board should be considered an appropriations-funded agency and thus fall within the Tucker Act's waiver. However, 12 U.S.C. § 244 clearly states that the money used to fund the Board (assessments from Federal Reserve banks) "shall not be construed to be Government funds or appropriated moneys."[21] And in any event, the only authority for the proposition that Tucker Act jurisdiction exists when Congress could appropriate money for an entity states that jurisdiction does not exist when there is "a clear expression by Congress that the agency was to be separated from general federal revenues."[22] As there is such a "clear expression" in this case, we hold that the Board is not within the Tucker Act's waiver of sovereign immunity.

Further, even if we were to hold that there was jurisdiction under the Tucker Act, a district court in this circuit would not have jurisdiction over RTI's claim. Rather, such a claim would have to be brought in United States Court of Federal Claims. However, as we hold that the Tucker Act does not waive the Board's sovereign immunity, that question is not dispositive here.

C.

RTI alternatively argues that the Board's sovereign immunity is impliedly waived. In so doing, RTI proceeds on two grounds. First, RTI cites United States v. Winstar Corp.[23] for the proposition that sovereign immunity should not be used to frustrate the reasonable expectations of private parties who contract with the government. However, as the Board indicates in its brief, Winstar did not involve the waiver of sovereign immunity. Rather, immunity in that case had been clearly waived, and the question before the Court involved the "unmistakeability doctrine," which regards the sovereign's ability to limit its own preexisting powers.

_____

[21] **Id.** at § 244.
[22] **L'Enfant Plaza Properties, Inc. v. United States**, 668 F.2d 1211, 1212 (Ct. Cl. 1982).

[23] 116 S. Ct. 2432 (1996).

7

No such "unmistakeability" question is at issue here. Additionally, although the language from Winstar regarding the reasonable expectations of private parties who deal with the government and the desirability of "the Government's credibility at the bargaining table"[24] may be compelling, it is nevertheless in direct conflict with the law's demand that there be a clear waiver of sovereign immunity. While it may be inequitable that the Board cannot be sued on contracts into which it enters, we recognize that the determination of the propriety of this arrangement is for Congress, not for us. As Chief Justice Vinson wrote in Larson v. Domestic & Foreign Commerce Corp.:

> We do not doubt that there may be some activities of the Government which do not require such [sovereign immunity] protection. There are others in which the necessity of immunity is apparent. But it is not for this Court to examine the necessity in each case. That is a function of the Congress.[25]

Therefore, we find Winstar inapplicable to this case.

We are also unpersuaded by RTI's argument that an implied waiver should be found in the Board's governing statutes. In its reply brief, RTI cites a 1992 amendment to 12 U.S.C. § 248 which states that:

> The Board may act in its own name and through its own attorneys in enforcing any provision of this title, regulations promulgated hereunder, or any other law or regulation, or in any action, suit, or proceeding to which the Board is a party . . . .[26]

This provision, RTI argues, amounts to the "functional equivalent" of a waiver of sovereign immunity in that it "recognizes that the Board can be a party to a legal action in its own name."[27] Again, while this argument may be compelling, it cannot withstand the requirement that

_____

**24** **United States v. Winstar Corp.** , 116 S. Ct. 2432, 2459 (1996).
**25** **Larson v. Domestic & Foreign Commerce Corp.**, 337 U.S. 682, 704-05 (1949).
**26** 12 U.S.C.A. § 248(p) (1989 & West Supp. 1997).
**27** Appellant's Reply Br. at 4.

8

a waiver of sovereign immunity be clear, express, and unequivocal. By its very nature, an argument of implicitness or equivalence is one that comprises a recognition of the ambiguity of the matter asserted, and as such ambiguities regarding sovereign immunity must be resolved in favor of the sovereign,[28] we cannot use it as a ground for a waiver. Fidelity to the clear authority of sovereign immunity jurisprudence demands otherwise. Therefore, we hold that the Board's governing statutes do not waive the Board's immunity from suit in contract.

III.

Based on the foregoing, we hold that the district court correctly found that the Board cannot be sued in contract in federal court.[29] Accordingly, we affirm the district court's dismissal of this case.

AFFIRMED
_____

[28] **Lane**, 116 S. Ct. at 2096.
[29] Nevertheless, we also recognize, as does the Board (Appellee's Br. at 13), that the Board is not immune to certain non-contract claims, as Congress has waived the Board's immunity from suit through statutes like the Federal Tort Claims Act. See 28 U.S.C.A. § 1346(b)(1993 & West Supp. 1997).

9