**Brian Keith O'QUIN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 05–991C.**

United States Court of Federal Claims.

July 19, 2006.

---

Brian Keith O'Quin, Forrest City, AR, pro se.

Roger A. Hipp, United States Department of Justice, Washington, D.C., for defendant.

### OPINION AND ORDER

SWEENEY, Judge.

Before the court is defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), filed on December 30, 2005. On July 7, 2006, plaintiff filed his response stating that he does not oppose defendant's motion. For the reasons set forth below, the court hereby GRANTS defendant's motion to dismiss based on this court's lack of subject matter jurisdiction.

### I. BACKGROUND

Plaintiff, Brian Keith O'Quin, filed a complaint in this court on September 1, 2005. While incarcerated at a federal facility in Oakdale, Louisiana, plaintiff alleges he was undercompensated in the amount of $245.00

for work he performed between August 2004 to March 2005 while employed by Federal Prison Industries, Inc. ("FPI"). Plaintiff currently is an inmate at the Federal Correctional Complex in Forrest City, Arkansas.

It appears from plaintiff's pleadings that the Federal Bureau of Prisons ("BOP"), a component of the United States Department of Justice that provides work programs and training opportunities for federal prisoners, advised plaintiff on three occasions (May 25, 2005, June 16, 2005, and July 25, 2005) that, in order to pursue the claim alleged, he was required to file a Form BP–9 request with the Federal Correctional Complex in Forrest City, Arkansas. The BOP's Administrative Remedy Coordinator identified four deficiencies with plaintiff's submissions: (1) plaintiff did not attempt informal resolution before seeking an administrative remedy; (2) plaintiff did not file Form BP–9 for the warden's review and before filing an appeal to the regional office; (3) plaintiff did not submit a copy of a completed Form BP–9 or a copy of the response from the warden; and (4) plaintiff did not complete the administrative remedy process at the institution level prior to appealing to the regional office. There is no evidence in the record that plaintiff took steps to cure these deficiencies.

## II. JURISDICTION

### A. Standard of Review

Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, or on appeal. *Gen–Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1379 (Fed. Cir.2004). When considering a RCFC 12(b)(1) motion, the burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The court must accept as true the allegations in the plaintiff's complaint and must construe such facts in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). Further, the court should not grant a motion to dismiss "unless

it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Finally, because plaintiff appears *pro se*, the court must hold plaintiff's pleadings to a lesser standard than those drafted by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers" when determining whether to dismiss the complaint).

### B. The Tucker Act

The United States Court of Federal Claims is a court of limited jurisdiction. *See Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir.1997). The scope of this court's jurisdiction to entertain claims and grant relief depends upon the extent to which the United States has waived its sovereign immunity. *See United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). In "construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." *Fidelity Construction Co. v. United States*, 700 F.2d 1379, 1387 (Fed.Cir.1983). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *King*, 395 U.S. at 4, 89 S.Ct. 1501 (citing *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Therefore, except when Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." *Sherwood*, 312 U.S. at 587–88, 61 S.Ct. 767.

The Tucker Act both confers jurisdiction upon the Court of Federal Claims and waives sovereign immunity with respect to certain actions for monetary relief filed against the United States. *See United States v. Mitchell*, 463 U.S. 206, 212–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Under the Tucker Act, sovereign immunity is waived for "any claim against the United States founded either upon the Constitution, or any Act of Con-

gress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000).

The Tucker Act itself, however, does not establish a substantive right of recovery. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989) (citations omitted), *aff'd,* 904 F.2d 45 (Fed.Cir.1990); *see also Testan,* 424 U.S. at 398, 96 S.Ct. 948 (stating that a "grant of a right of action must be made with specificity.").

### C. Non–Appropriated Funds Instrumentality ("NAFI") Doctrine

■ In addition to the Tucker Act, this court's jurisdiction is limited further by the non-appropriated funds doctrine. *See Furash & Co. v. United States,* 252 F.3d 1336, 1339 (Fed.Cir.2001); *L'Enfant Plaza Props., Inc. v. United States,* 229 Ct.Cl. 278, 668 F.2d 1211, 1212 (1982). Essentially, a NAFI is "an entity which does not receive its funds from congressional appropriations." *AINS, Inc. v. United States,* 56 Fed.Cl. 522, 524 (2003) (citing *United States v. Hopkins,* 427 U.S. 123, 125 n. 2, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976)).[1]

In *Standard Oil Co. of California v. Johnson,* the Supreme Court acknowledged the existence of federal entities for which the government does not accept financial responsibility. 316 U.S. 481, 485, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942). The NAFI doctrine as it relates to the Court of Federal Claims began to develop after *Standard Oil. AINS, Inc. v. United States,* 365 F.3d 1333, 1337 (Fed.Cir. 2004). Following *Standard Oil,* the Court of

Claims found that jurisdiction under the Tucker Act was restricted to "claims against government instrumentalities whose judgments could be paid from appropriated funds." *Id.* Thus, if the United States assumed no financial liability for a federal entity, then the United States could not be said to have waived sovereign immunity, and no claim against the government would exist under the Tucker Act. *Id.*

■ Because the Tucker Act requires that judgments awarded by this court must be paid from appropriated funds, "absent some specific jurisdictional provision to the contrary, the Court of Federal Claims generally lacks jurisdiction over actions in which appropriated funds cannot be obligated." *Core Concepts of Florida, Inc. v. United States,* 327 F.3d 1331, 1334 (Fed.Cir.2003) (citations omitted); *see also United States v. Gen. Elec. Corp.,* 727 F.2d 1567, 1570 (1984) (finding that "[t]he non-appropriated funds doctrine applies only if the activity was 'specifically intended to operate without using appropriated funds.' ") (citation omitted). While plaintiff need not establish that appropriated funds have actually been used for the agency's activities, plaintiff must show that "under the agency's authorizing legislation Congress could appropriate funds if necessary." *L'Enfant Plaza,* 668 F.2d at 1212.

■ The NAFI doctrine has evolved into a four-factor test:

A government instrumentality is a NAFI if: (1) It does "not receive its monies by congressional appropriation." *Hopkins,* 427 U.S. at 125[, 96 S.Ct. 2508]; (2) It derives its funding "primarily from [its] own activities, services, and product sales." *Cosme Nieves v. Deshler,* 786 F.2d 445, 446 (1st Cir.1986); (3) Absent a statutory amendment, there is no situation in which appropriated funds could be used to fund the federal entity. *General Electric,* 727 F.2d at 1570; and (4) There is "a clear expression by Congress that the agency was to be separated from general federal

---

1. The trial court's decision in *AINS, Inc.* provides a scholarly discussion of the origin and development of the NAFI doctrine.

revenues." *L'Enfant Plaza*, 668 F.2d at 1212.

*AINS, Inc.*, 365 F.3d at 1342 (alteration in original).

The United States Court of Appeals for the Federal Circuit has refined further the NAFI doctrine to explain that it does not insulate the United States against Constitutional claims because the United States "incurs takings liability for the acts of its agents." *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1362 (Fed.Cir.2005). Reasoning that NAFIs are agents of the government, *Standard Oil*, 316 U.S. at 485, 62 S.Ct. 1168, the Federal Circuit explained that the Tucker Act, therefore, provides jurisdiction over takings claims against the government based on actions of NAFIs. *Lion Raisins, Inc.*, 416 F.3d at 1364. However, in the case *sub judice*, no takings claim is present.

## III. DISCUSSION

■ The FPI (also known by its trade name, "UNICOR") is a government-owned corporation that was established in 1934 to provide work programs for inmates of federal correctional facilities. *Core Concepts*, 327 F.3d at 1333. In *Core Concepts*, the Federal Circuit applied the four-factor test to determine whether FPI was a NAFI. 327 F.3d at 1335–37. First, FPI's enabling legislation does not include "authorization of appropriations." *Denkler v. United States*, 782 F.2d 1003, 1005 (Fed.Cir.1986). Second, FPI is a self-sufficient corporation "whose funds are derived primarily from its product sales." *Core Concepts*, 327 F.3d at 1335 (citing *Aaron v. United States*, 51 Fed.Cl. 690, 692 (2002)). Next, though the Prison Industries Fund was derived from appropriated funds, FPI repaid its initial funding soon after it

was established and "has never received any appropriations from Congress since that time." *Core Concepts*, 327 F.3d at 1335 (citation omitted).

The fourth factor, congressional intent, "is often the least obvious." *AINS, Inc.*, 365 F.3d at 1343. The FPI's self-sufficiency is not necessarily determinative of its NAFI status; instead, congressional intent determines if FPI has NAFI status. *Core Concepts*, 327 F.3d at 1335. This court must determine "whether the agency's authorizing legislation makes clear that Congress intends for the agency—or the particular activity that gave rise to the dispute in question—to be separated from general federal revenues." *Furash*, 252 F.3d at 1340; *see also Denkler*, 782 F.2d 1003 (holding the Board of Governors of the Federal Reserve System to have NAFI status even though its separation from appropriated funds was not made explicit). Echoing *Core Concepts*, this court notes that while FPI's enabling legislation directs all of FPI's monies be deposited into the United States Treasury, the monies "are to be kept distinct from general federal revenues." 327 F.3d at 1336. Upon consideration of the four-factor NAFI test, the Federal Circuit determined that FPI satisfies all four factors, deeming FPI to be a NAFI for which the government is not financially answerable in the Court of Federal Claims. *Id.* at 1335–37.

Thus, the binding precedent of the Federal Circuit makes plain that because FPI is a NAFI, the United States has not waived its sovereign immunity, and, consequently, plaintiff's claim is not within this court's jurisdiction.[2] As a result, FPI cannot be sued in this court for non-Constitutional claims and plaintiff must look elsewhere for a remedy.[3]

---

2. In the alternative, defendant also argues in its motion that (1) under RCFC 12(b)(6), plaintiff's complaint fails to state a claim upon which relief can be granted; and (2) this court does not have jurisdiction under the Prison Litigation Reform Act ("PLRA"), which states that no prisoner shall file suit in federal court "with respect to prison conditions" until administrative remedies are exhausted. 42 U.S.C. § 1997e(a) (2000). Because the NAFI doctrine is a clear bar to this court's exercise of jurisdiction, the court need not address the remaining arguments presented in defendant's motion to dismiss.

3. The administrative path plaintiff must follow to obtain the relief he seeks is set forth in the PLRA. The PLRA states that no prisoner shall file suit in federal court "with respect to prison conditions" until administrative remedies are exhausted. 42 U.S.C. § 1997e(a). Plaintiff is required to exhaust all administrative remedies before the BOP before initiating a lawsuit. The BOP utilizes a structured administrative remedy program for inmates to file their complaints. 28 C.F.R. § 542.10–15 (2005). The inmate must first attempt "to informally resolve the issue" prior to

Accordingly, defendant's motion to dismiss is GRANTED. The Clerk of the Court is directed to DISMISS plaintiff's complaint WITHOUT PREJUDICE.

IT IS SO ORDERED.

filing a "Request for Administrative Remedy." *Id.* § 542.13. If the informal resolution fails, the inmate then may file a formal request for administrative remedy to the institution's staff on the appropriate form (BP–9). *Id.* § 542.14. The third step is for the inmate to appeal to the regional director on the appropriate form (BP–10) if the inmate's complaint is not resolved to his satisfaction. *Id.* § 542.15. Finally, if the regional director denies the appeal, the inmate may then file a final appeal with the general counsel in the Central Office of the Bureau of Prisons on the appropriate form (BP–11). *Id.* The appeal "to the General Counsel is the final administrative appeal." *Id.*

