FURASH & COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–240 C.

United States Court of Federal Claims.

April 26, 2000.

Jed L. Babbin and Sharon L. Babbin, Tighe, Patton & Babbin, PLLC, Washington, D.C., for plaintiff.

Armando O. Bonilla, with whom were Acting Assistant Attorney General David W. Ogden, and Director David M. Cohen, Department of Justice, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

### INTRODUCTION

This case comes before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. Defendant contends that the present contract claim involves an independent government agency—the Federal Housing Finance Board—whose activities are not supported by congressionally appropriated funds and whose contract disputes therefore cannot be adjudicated in this court. The parties have briefed the issue, and oral argument was heard on April 13, 2000. We now rule in favor of defendant and dismiss the pending action.

### BACKGROUND

*Facts*

Plaintiff, Furash & Co., entered into a professional services contract with the Federal Housing Finance Board [1] (the Finance Board) to provide consulting services in connection with the Federal Home Loan Bank system. During the course of contract performance, the Finance Board paid Furash $542,999.87 in progress payments out of a total contract price of $754,155. For reasons unrelated to the present motion, plaintiff failed to submit its final report by the specified deadline, and the Finance Board accordingly terminated the contract for default.

By letter dated April 15, 1999, the Finance Board requested the return of $397,999.87, representing the $542,999.87 in contract progress payments that it had paid to plaintiff, less payment for the work that actually was performed (totaling, in the Finance Board's estimation, $145,000). Plaintiff in turn sued in this court, seeking (i) a conversion of the contract's default termination to a termination for convenience, (ii) a determination that it is entitled to retain the progress payments remitted by the Finance Board during contract performance, and (iii) a judgment in the amount of $470,580, representing the amount of compensation claimed for additional work allegedly performed at the Finance Board's direction.

---

1. The Finance Board is an independent agency in the executive branch created by Congress as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, § 702, 103 Stat. 183, 413–15 (1989) (codified at 12 U.S.C. § 1421 *et seq.* (1994)), as a successor to the Federal Home Loan Bank Board. 12 U.S.C. § 1422a(a)(1)-(2) (1994).

Defendant now moves to dismiss this action on the grounds that the court has no jurisdiction over claims arising out of the contract activities of the Finance Board.

*Law*

█ It is a fundamental rule of jurisprudence that the United States "as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). The Tucker Act, set forth at 28 U.S.C. § 1491 (1994 & Supp. II 1996), constitutes a partial waiver of the government's sovereign immunity, conferring jurisdiction on this court over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of the executive department, or upon any express or implied contract with the United States."

█ Under 28 U.S.C. § 2517 (1994 & Supp. II 1996), judgments of the Court of Federal Claims are paid from funds appropriated by Congress for that purpose.[2] In recognition of the jurisdictional constraint implicit in this payment scheme, earlier decisions of the Court of Claims reflect the adoption of a "non-appropriated funds" exception to the scope of the court's jurisdiction. *See, e.g., Borden v. United States,* 126 Ct.Cl. 902, 116 F.Supp. 873 (1953); *Pulaski Cab Co. v. United States,* 141 Ct.Cl. 160, 157 F.Supp. 955 (1958); *Kyer v. United States,* 177 Ct.Cl. 747, 369 F.2d 714 (1966), *cert. denied,* 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967). This exception provides, in essence, that the court's Tucker Act jurisdiction may not be invoked with respect to transactions that "involved agencies where the statutory authority for the activities [in suit] specifically limited liability or expenditures to non-appropriated funds." *L'Enfant Plaza Properties, Inc. v. United States,* 229 Ct.Cl. 278, 281, 668 F.2d 1211, 1213 (1982). In other words, the exercise of the court's jurisdiction under the Tucker Act must be confined to

cases in which appropriated funds can be obligated.

*Defendant's Motion*

It is on this basis—the claimed unavailability of congressionally appropriated funds to support the activity in question—that defendant seeks to have this action dismissed. In defendant's view, Congress created the Finance Board with the clear intent of establishing a self-funding agency to operate independently of appropriated funds, thereby leaving this court without jurisdiction over the instant dispute.

In support of its position, defendant refers us to 12 U.S.C. § 1438(b) (1994) (current version at 12 U.S.C.A. § 1438(b) (West Supp. 2000)) and 12 U.S.C. § 1422b(c) (1994) which cover, respectively, the Finance Board's assessment authority and the treatment of its receipts. Section 1438(b) reads, in part, as follows:

(1) In general

The Board may impose a semiannual assessment on the Federal Home Loan Banks, the aggregate amount of which is sufficient to provide for the payment of the Board's estimated expenses for the period for which such assessment is made.

(2) Deficiencies

If, at any time, amounts available from any assessment for any semiannual period are insufficient to cover the expenses of the Board incurred in carrying out the provisions of this chapter during such period, the Board may make an immediate assessment against the Banks to cover the amount of the deficiency for such semiannual period.

Defendant argues that the above-quoted statute plainly evidences a congressional intent that the Finance Board operate on a self-funding basis. That intent, defendant maintains, is also manifest in the second of the statutory sections relied upon, 12 U.S.C. § 1422b(c). This section, titled "Receipts of Board," provides as follows:

---

**2.** 28 U.S.C. § 2517 provides in part:

(a) Except as provided by the Contract Disputes Act of 1978, every final judgment rendered by the United States Court of Federal Claims against the United States shall be paid

out of any general appropriation therefor, on presentation to the Secretary of the Treasury of a certification of the judgment by the clerk and chief judge of the court.

Receipts of the Board derived from assessments levied upon the Federal Home Loan Banks and from other sources (other than receipts from the sale of consolidated Federal Home Loan Bank bonds and debentures ...) shall be deposited in the Treasury of the United States. Salaries of the directors and other employees of the Board and all other expenses thereof may be paid from such assessments or other sources and shall not be construed to be Government Funds or appropriated monies, or subject to apportionment for the purposes of chapter 15 of title 31, or any other authority.

Based on the foregoing statutes, defendant urges us to recognize that the funds available to the Finance Board—including those used in support of the contract at issue—derive only from non-appropriated sources and, moreover, retain their private character even when placed on deposit in an account with the Treasury. In short, the government argues, the agency is not meant to function with public monies.

*Plaintiff's Response*

Plaintiff counters with a two-fold response. Plaintiff contends, first of all, that the non-appropriated funds doctrine deprives this court of jurisdiction only where Congress, by statute, has expressly prohibited an agency's use of appropriated funds. In this case, argues plaintiff, not only has there been no such explicit prohibition, but Congress, in fact, has manifested an intent to sustain the Finance Board's activities through the availability of appropriated funds. In support of this latter proposition, plaintiff refers us to 12 U.S.C. § 1438a (1994) and 12 U.S.C. § 1439a (1994), two statutes whose texts we consider later. Secondly, plaintiff contends that even if the court were to conclude that the Finance Board is to be treated as a non-appropriated fund instrumentality, nevertheless the contracts of that agency would remain litigable in this court. Specifically, the argument is that the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1994 and Supp. II 1996), has narrowed the application of the non-appropriated funds doctrine and that contracts subject to that Act (as plaintiff's contract purportedly is) are actionable in this court.

## DISCUSSION

### I.

We begin our analysis of this case by repeating the point noted in *L'Enfant Plaza Properties, Inc. v. United States,* 229 Ct.Cl. at 279, 668 F.2d at 1212, an earlier case involving the Office of the Comptroller of the Currency, in which the court was called upon to consider—and rejected—application of the non-appropriated funds doctrine. In determining that it possessed jurisdiction over the contract at issue, the court concluded that "[j]urisdiction under the Tucker Act must be exercised absent a firm indication by Congress that it intended to absolve the appropriated funds of the United States from liability for acts of the Comptroller." In the argument before us now, plaintiff takes this language to mean that the non-appropriated funds doctrine can be invoked to defeat our jurisdiction only where the use of appropriated funds in support of an agency function is expressly prohibited by statute.

▮ We do not agree with this interpretation; it does not find support in our case law. Rather, as our cases show, the controlling principle is whether the agency's enabling legislation indicates that Congress intended the activity in question to operate without the benefit of appropriated funds. For example, in *McCloskey v. United States,* 208 Ct.Cl. 697, 530 F.2d 374 (1976), the court accepted the government's non-appropriated funds defense where the facts showed that a congressionally-authorized contract with the District of Columbia Armory Board for the construction of a stadium facility was to be funded entirely through the board's issuance of bonds, and that any shortfall temporarily made up by the Secretary of the Treasury was to be repaid promptly and with interest. The court stressed that, under the congressionally-enacted stadium financing scheme, all proceeds from the board's bond sales were to be placed in an operating fund and that fund was to be utilized "for *all* the costs

of stadium construction." *Id.* at 700, 530 F.2d at 376.

■ Similarly, in *Kyer v. United States,* 177 Ct.Cl. 747, 369 F.2d 714 (1966), the court held that the contracts of an agricultural cooperative committee, although entered into under the authority of regulations promulgated by the Secretary of Agriculture, were not redressable under the Tucker Act because the enabling legislation revealed a funding scheme that exclusively relied on assessments against handlers and producers. The committee, noted the court, "was neither supported by appropriations nor authorized, in any manner, to obligate such funds." *Id.* at 752, 369 F.2d at 718.

Indeed, even in *L'Enfant Plaza,* the case on which plaintiff places chief reliance, rejection of the non-appropriated funds defense turned not on the absence of an express statutory prohibition against the agency's use of appropriated funds but rather on the fact that the Comptroller's office, although a self-funding activity at the time suit was brought, had been sustained with appropriated funds in earlier periods. Congress, in other words, had not put in place a statutory scheme that separated the Comptroller's office from the support of appropriated funds when need might so occasion.

Can the same be said in this case? We think not. In examining the Finance Board's enabling legislation, we observe that Congress designed a funding mechanism—through a series of semiannual and special assessments—that allows the agency to be entirely self-funding. The comprehensiveness of that scheme, as a practical matter, renders additional, appropriated monies unnecessary. We recognize, of course, that the self-funding nature of an agency may not be dispositive as to whether that agency is legally eligible for appropriated funds. But the fact that Congress empowered the Finance Board to levy assessments, and, in doing so, to provide for all of the Board's estimated expenses, strongly suggests Congress' desire to have the agency operate wholly apart from public funds.

Our conclusion is bolstered by the language in section 1422b(c). That section (previously quoted) clearly specifies that funds used to pay the Finance Board's expenses are not to be construed as appropriated monies. ("Salaries of the directors and other employees of the Board and all other expenses thereof may be paid from such assessments or other sources and shall not be construed to be Government Funds or appropriated monies, or subject to apportionment for the purposes of chapter 15 of title 31, or any other authority." 12 U.S.C. § 1422b(c).) Such a limitation, we believe, represents a clear expression of Congress' intent to keep the Finance Board's finances separate from public funds.

A like conclusion was reached in *Research Triangle Inst. v. Board of Governors of Fed. Reserve Sys.,* 132 F.3d 985, 988 (4th Cir. 1997), *cert. denied,* 525 U.S. 811, 119 S.Ct. 44, 142 L.Ed.2d 34 (1998). Among the issues considered in that case was whether the Board of Governors of the Federal Reserve System (the agency responsible for regulation of the Federal Reserve Banks) was an appropriations-funded agency and thus amenable to suit under the Tucker Act. In deciding this issue against the plaintiff-contractor (Research Triangle), the court of appeals noted that the money used to fund the Board derived, as here, from assessments against member banks. And, under the terms of the relevant statute, 12 U.S.C. § 244, it was provided that these assessments "shall not be construed to be Government funds or appropriated moneys." On the basis of this statutory language, the court observed:

> the only authority for the proposition that Tucker Act jurisdiction exists when Congress *could* appropriate money for an entity [a reference to this court's decision in *L'Enfant Plaza* ] states that jurisdiction does not exist when there is a "clear expression by Congress that the agency was to be separated from general federal revenues." As there is such a "clear expression" in this case, we hold that the Board is not within the Tucker Act's waiver of sovereign immunity.

132 F.3d at 989 (footnote omitted).

Plaintiff argues against our reading of section 1422b(c) by saying that the statute does no more than dictate how the agency's re-

ceipts are to be managed—i.e. free from the requirement of apportionment (the requirement of ratable expenditure) that section 1512(a) of Title 31 imposes upon the obligation and expenditure of appropriated funds.[3] We disagree with this interpretation: it attributes too narrow a purpose to the statute. Granted, the statute does free the agency from the general requirement calling for the apportionment of appropriated funds. More important than that, however, is the fact that, in specifying that the agency's receipts, even though deposited with the Treasury, "shall not be construed to be Government funds or appropriated monies," the statute thereby frees those funds from the requirement of congressional appropriation that otherwise would be necessary to authorize the withdrawal and expenditure of funds held in the Treasury of the United States. Thus, in putting the agency's funds beyond the appropriations process, Congress has clearly signaled its intention that the agency should operate free of public funds.

Nor do the several statutory provisions that plaintiff cites support a contrary conclusion.[4] The first of these provisions, 12 U.S.C. § 1438a, provides in part that "expenses of the Board in making studies or investigations specifically directed by law, or requested by the Congress or either House thereof or by a committee of either House, including services authorized by section 3109 of title 5, shall be considered as nonadminis-trative expenses." As to the significance of this statute, the parties agree that the identification of congressionally-ordered study costs as "nonadministrative expenses" means, in effect, that the costs of such studies will be borne by appropriated funds rather than by assessments collected from the Finance Board's member banks. However, as was pointed out at oral argument, the statute cannot be read—as plaintiff attempts to do—as a broad-based pronouncement regarding the general availability of appropriated funds to the Finance Board. Rather, as defendant's counsel noted, the very existence of this statute and the narrowness of the interest it addresses serve to underscore the point that, in all other aspects of its mission, the Finance Board was expected to operate without the benefit of appropriated funds. We agree with this reasoning.

The other statute plaintiff has cited, 12 U.S.C. § 1439a, also offers plaintiff little support. This statute, the text of which we have set out in a footnote below[5], refers to funds of the Finance Board that have been deposited in the Treasury of the United States "including unexpended balances of moneys appropriated therefrom for administrative expenses." Although plaintiff reads this language as indicating that the Finance Board can and does operate with appropriated funds, that is clearly not the case. The moneys that are the object of the statute's concern are the agency's own funds—those

---

**3.** Section 1512(a) of Title 31 states in relevant part that "an appropriation available for obligation for a definite period shall be apportioned to prevent obligation or expenditure at a rate that would indicate a necessity for a deficiency or supplemental appropriation for the period." 31 U.S.C. § 1512(a) (1994). The purpose of the statute is to insure the obligation and expenditure of appropriated funds at a controlled rate in order to prevent deficiencies from arising before the end of the fiscal year.

**4.** In addition to the statutory provisions that we proceed to examine in the opinion, namely, 12 U.S.C. § 1438a and 12 U.S.C. § 1439a, plaintiff explained at oral argument that it was also relying on the text of 12 U.S.C. § 1438(c)(7) (1994), to support its contention that the Finance Board's operations are, in part, sustained through appropriated funds. Beyond noting plaintiff's reference to § 1438(c)(7), we do not further discuss that section in the opinion be-cause we deem it inapplicable to this case. As the text of § 1438(c) indicates, the entirety of that subsection applies to the Office of Thrift Supervision, not the Finance Board.

**5.** The statute reads as follows:

All moneys and funds heretofore deposited in the Treasury of the United States under the last sentence of section 1439 of this title (including unexpended balances of moneys appropriated therefrom for administrative expenses), and hereafter all moneys and funds which would, except for this provision, be so depositable thereunder, shall be deposited with the Treasurer of the United States in a special deposit account and shall be available, retroactively as well as prospectively, for expenditure for all purposes of the Federal Home Loan Bank Board and the Federal Home Loan Bank Administration, subject to subsections (a) and (b) of section 712a of title 15.

12 U.S.C. § 1439a (footnote omitted).

deriving from member bank assessments—and not funds appropriated from the public treasury.

The point is explained in a 1987 opinion of the Comptroller General addressing the statutory limitations contained in annual appropriation acts on administrative expenses of the Federal Home Loan Bank Board (the statutory predecessor to the Finance Board). The opinion reads in relevant part as follows:

> Under 12 U.S.C. .... § 1439a, the moneys the Board receives from assessments on the Banks and from all other sources are deposited in a special account in the Treasury—a revolving fund—in which the funds remain available indefinitely to pay the Board's expenses. In accordance with 15 U.S.C. § 712a, the Board is prohibited from incurring any obligation for administrative expenses "except pursuant to an annual appropriation specifically therefor * * *." Thus, even though the moneys in the Board's revolving fund are not obtained from the Treasury, an appropriation is still required in order for the Board to use those funds to pay its administrative expenses. Based on this requirement, it has been the practice of Congress for many years to include a provision in the annual appropriation for the Department of Housing and Urban Development and Independent Agencies that limits the amount the Board can spend on its administrative expenses....
>
> . . . .
>
> While, as explained previously, the Board does not obtain funds to conduct its activities from the general fund of the Treasury (as most Federal agencies do), under 15 U.S.C. § 712a, annual appropriations are a prerequisite for the Board to use the moneys in its revolving fund to pay its administrative expenses. Accordingly, as explained above, every year specific dollar "limitations" are included in annual appropriation acts which authorize the Board

to incur administrative expenses up to the amount of the limitations.

1987 WL 101592, *1 (Comp.Gen.)

For the reasons expressed in the Comptroller General's opinion, we reject plaintiff's contention that 12 U.S.C. § 1439a acknowledges the use and availability of public funds to support the Finance Board's activities.

## II.

■ We turn now to plaintiff's second principal argument: that its contract was subject to the requirements of the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1994 & Supp. II 1996), and that that Act, in turn, has narrowed the scope of the non-appropriated funds doctrine as it relates to the jurisdiction of this court.

Plaintiff's argument begins with the fact that its contract with the Finance Board incorporated, by reference, the standard government disputes clause which recites, in its opening paragraph, that "[t]his contract is subject to the Contract Disputes act of 1978, as amended (41 U.S.C. 601–613)." The inclusion of this clause in its contract, plaintiff argues, grants it the contractual right to proceed within the framework of the Contract Disputes Act; hence, granting it the right to litigate its contract claim in this court pursuant to section 609 of the Act.[6]

We disagree. The scope of the Contract Disputes Act appears in Section 602 of the Act. That section reads in pertinent part as follows:

> Unless otherwise specifically provided herein, this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in [section 1491] of title 28) entered into by an executive agency for ...

the procurement of property (other than real property), services, construction; or, the disposal of personal property. The statute referred to above, section 1491 of Title 28, is this court's basic jurisdictional statute. That statute reads in relevant part as follows:

> bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary.

---

**6.** 41 U.S.C. § 609(a) provides:

(1) ... [I]n lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States .... *For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.*

28 U.S.C. § 1491 (emphasis added). The underscored text identifies the only non-appropriated fund instrumentalities over whose contract disputes this court may exercise jurisdiction.[7] Since the Finance Board is clearly not among the non-appropriated fund activities enumerated in Section 1491, its contracts do not come within our jurisdiction.

Nor does the Contract Disputes Act direct us to a different outcome. Even if we assume, as plaintiff's argument implicitly does, that the Contract Disputes Act is jurisdictional, it is plain from the text of the Act that it neither modifies nor supplements the jurisdiction of this court as set out in section 1491 of Title 28. The inclusion in Section 602 of the parenthetical clause "including those of the nonappropriated fund activities described in [section] 1491 of Title 28" signifies to us that section 1491 of Title 28 is the intended point of reference for defining the reach of the Contract Disputes Act. That is to say, the jurisdictional limits inherent in 28 U.S.C. § 1491 are also imbedded in the Contract Disputes Act.

To argue the contrary position—that the Contract Disputes Act stands on its own and reaches the contracts of all federal agencies, including those of the Finance Board—is to urge a reading of the statute that renders the parenthetical language superfluous. No purpose would be served by adding a parenthetical clause that, on its face, reaches only *some* non-appropriated agencies, if the intention of the statute, according to the argument now being made, was to include all non-appropriated agencies. Clearly, the statute would better secure that aim if it included no parenthetical clause at all, for then its reach would extend to "any express or implied contract ... entered into by an executive agency."

The basic axiom of statutory construction, that "a legislature is presumed to have used no superfluous words," *Platt v. Union Pac. R.R.,* 99 U.S. 48, 58, 25 L.Ed. 424 (1878), compels us to read the parenthetical clause as providing for the inclusion of those particular agency contracts which, absent their specific enumeration, would fall outside the operation of the statute. The inclusion of that which otherwise would be excepted is, by definition, a limited exception that comprehends only the subjects named. Accordingly, we read Section 602 as reaching only those non-appropriated fund activities presently covered in Section 1491 of Title 28.[8]

The fact that the Contract Disputes Act was incorporated by reference into plaintiff's contract cannot change our conclusion. The reach of the Contract Disputes Act may only be determined from its text. In section 602 of the Act, Congress extended the reach of the Act to include only those non-appropriated fund activities whose contract claims came

---

7. That authority was granted this court by a 1970 amendment to Section 1491. Pub.L. No. 91–350, §§ 1(b), 2(b), 84 Stat. 449 (1970).

8. Essentially the same conclusion was reached in *Research Triangle,* quoted *supra.* There the court, in addressing the question whether the Board of Governors of the Federal Reserve System was immune from suit, stated the following:

   A waiver of federal sovereign immunity can be found in one of two places: in the specific statute governing a governmental entity, or in one of the broad waivers of immunity made by Congress for certain classes of federal agencies. The Tucker Act and the Contract Dis-

   putes Act are examples of the latter type of waiver. In each statute, Congress explicitly waived sovereign immunity with regard to contract actions against certain federal agencies and placed jurisdiction over those actions in the United States Court of Federal Claims. *However, unless these statutes specify otherwise, they apply only to agencies that operate using appropriated funds,* and as a result they do not waive immunity from contract actions for all agencies.

   132 F.3d at 987 (emphasis added) (footnotes omitted).

within the boundaries of this court's then-existing jurisdiction. This jurisdictional limitation cannot be modified by contract; it is a limitation established by Congress that is embodied in statute.

As a corollary to its Contract Disputes Act argument, plaintiff further contends that, in the case of contracts subject to the Act, the barrier to the exercise of our jurisdiction that otherwise is imposed by the non-appropriated funds doctrine has been modified. Plaintiff points to the text of 28 U.S.C. § 2517(a) which states, in part, that "[e]xcept as provided by the Contract Disputes Act of 1978, every final judgment rendered by the United States Court of Federal Claims ... shall be paid out of any general appropriation therefor ...." In plaintiff's reading of them, these words grant it the right to sue in this court notwithstanding the more general requirement that otherwise limits our contract jurisdiction to claims that arise out of activities that depend upon appropriated funds.

Plaintiff's assertion is not correct. The language in question—"[e]xcept as provided by the Contract Disputes Act of 1978"—does no more than give recognition to the fact that, under Section 612 of the Contract Disputes Act, payment of this court's judgments, while *initially* to be made from the judgment fund (pursuant to 28 U.S.C. § 2517), is subject to a reimbursement obligation "by the agency whose appropriations were used for the contract." 41 U.S.C. § 612(c). It is this reimbursement obligation and the exception that it signifies to the basic rule that our judgments are to be paid from the judgment fund that stands behind the introductory wording of 28 U.S.C. § 2517.[9] That language has no relevance either to plaintiff's status or to plaintiff's claim.

## CONCLUSION

We are, in the final analysis, charged with the task of determining how financially independent Congress intended the Finance Board to be, and whether its intent to separate the agency from the public fisc was clearly expressed in the agency's authorizing legislation. We conclude that, in the absence of an affirmative commitment of appropriated funds by Congress, and in light of a statutory framework that provides for the complete private funding of the Finance Board's expenses while at the same time characterizing all of the Board's expenditures as non-appropriated, Congress has made clear its intent for the Board to be self-sustaining. The relief to which plaintiff is entitled, if any, must come from funds raised by the Finance Board, and not from the public treasury.

Based on the foregoing, we hold that this court has no jurisdiction to hear plaintiff's claim and accordingly dismiss the present action.

---

9. The amendment of 28 U.S.C. § 2517 through the addition of the introductory wording—"Except as provided by the Contract Disputes Act of 1978"—was accomplished as part of the enactment of the Contract Disputes Act. Pub.L. No. 95–563, § 14(e), 92 Stat. 2383, 2390 (1978).