**Gary L. AARON, et al., Plaintiffs,**

v.

**THE UNITED STATES, Defendant.**

**No. 00–315C.**

United States Court of Federal Claims.

Feb. 21, 2002.

Alan Banov, Washington, D.C., argued for plaintiffs.

Domenique Kirchner, Department of Justice, Washington, D.C., and Kenneth Hyle, Bureau of Prisons, Washington, D.C., of counsel, argued for the United States.

OPINION

BRUGGINK, Judge.

This is an action for overtime pay. Plaintiffs are employees or former employees of the Bureau of Prisons ("Bureau") or Federal Prison Industries, Inc. ("FPI") (referred to hereafter as "UNICOR"). Pending is defendant's Motion to Dismiss All Claims Related to UNICOR. Oral argument was held on January 18, 2002. On January 31, 2002, the court ordered supplemental briefing concerning the consistency of defendant's position with certain items of legislative history concerning the Bureau and UNICOR. For the reasons set out below, defendant's motion is granted.

FACTUAL BACKGROUND

Plaintiffs allege that the Bureau, UNICOR, and the Department of Justice have violated either the Federal Employees Pay Act ("FEPA"), 5 U.S.C. §§ 5542, 5544 (1994), or the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (1994), by failing to

pay them overtime for pre-shift and post-shift activities. With respect to the UNICOR plaintiffs implicated by the current motion, however, the parties agreed at oral argument that only FEPA claims are at issue.

UNICOR is a statutorily-created government corporation. 18 U.S.C. § 4121; 28 C.F.R. § 345.11 (2001). Its mission is to provide "work simulation programs and training opportunities for inmates confined in Federal correctional facilities." 28 C.F.R. § 345.11. Congress established UNICOR as a government corporation pursuant to the Act of June 23, 1934, 48 Stat. 1211, and charged it with the duty of "determining in what manner and to what extent industrial operations shall be carried on in Federal penal and correctional institutions." A similar but more limited function had been implemented prior to 1934 at two federal prisons. 60 Comp. Gen. 323 (1981). Small appropriations had been made to support work at those facilities by inmates. *Id.* Those monies had been repaid to the Treasury, and the programs became self-supporting. *Id.* In addition to transferring these activities to the new corporation, Section 4 of the 1934 act authorized the Secretary of the Treasury to transfer all funds held in the prison industries working capital fund to the "Prison Industries Fund" and directed that all money under UNICOR's control be deposited in the Treasury of the United States to the credit of that fund. The corporation's enabling legislation does not contain a "sue and be sued" clause.

## DISCUSSION

The United States, as a sovereign, is generally immune from suit unless it otherwise consents. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The Tucker Act, representing a partial waiver of this sovereign immunity, gives this court jurisdiction over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a). In the case at bar, FEPA is the "Act of Congress" upon which plaintiffs rely. In a typi-

cal FEPA claim, therefore, the waiver of sovereign immunity is perfected in the sense that FEPA creates a potential statutory claim for money, and the Tucker Act gives this forum jurisdiction to hear the claim.

■ This is not, however, the typical claim. Instead, the presence of UNICOR raises an additional jurisdictional hurdle, the "non-appropriated fund" or NAFI exception. This exception is triggered by the fact that final judgments rendered by this court "shall be paid out of any general appropriation." 28 U.S.C. § 2517. Absent some more specific jurisdictional grant, therefore, we may only hear claims "in which appropriated funds can be obligated." *L'Enfant Plaza Properties, Inc. v. United States,* 229 Ct.Cl. 278, 668 F.2d 1211, 1212 (1982). As explained in *Furash & Co. v. United States,* 46 Fed.Cl. 518, 520 (2000), *aff'd,* 252 F.3d 1336 (Fed.Cir. 2001), the non-appropriated funds exception to the scope of our jurisdiction means that

the court's Tucker Act jurisdiction may not be invoked with respect to transactions that "involved agencies where the statutory authority for the activities [in suit] specifically limited liability or expenditures to non-appropriated funds." In other words, the exercise of the court's jurisdiction under the Tucker Act must be confined to cases in which appropriated funds can be obligated.

*Id.* at 520 (quoting *L'Enfant,* 668 F.2d at 1213) (citation omitted). *See also Denkler v. United States,* 782 F.2d 1003 (Fed.Cir.1986).

■ What this means is that the fact that Congress has generally waived sovereign immunity with respect to federal employee pay claims through FEPA is not dispositive. Despite this general waiver, jurisdiction will not lie when there is a "clear expression by Congress that the agency was to be separated from general federal revenues." *L'Enfant,* 668 F.2d at 1212.

Nor, however, is it dispositive that the agency is financially independent, as UNICOR is. Instead,

Congress must have intended that the activity resulting in the claim was not to receive or be funded from appropriated funds. To sustain jurisdiction ..., the re-

quirement is not that appropriated funds have been used for the activity but that under the agency's authorizing legislation Congress could appropriate funds if necessary. Jurisdiction under the Tucker Act must be exercised absent a firm indication by Congress that it intended to absolve the appropriated funds of the United States from liability for acts of the [agency].

*L'Enfant,* 668 F.2d at 1212 (citations omitted); *see also Furash,* 46 Fed.Cl. at 521 ("as our cases show, the controlling principle is whether the agency's enabling legislation indicates that Congress intended the activity in question to operate without the benefit of appropriated funds").

Thus, the first level of inquiry is whether Congress has made it clear that a NAFI is to operate without appropriated funds. Only if that question is answered in the affirmative is it necessary to determine if Congress has nevertheless indicated a desire to support claims of the specific type asserted against UNICOR out of the Treasury.

It is uncontested that the corporation has never received appropriated funds. Plaintiffs' contention that UNICOR is not a NAFI is based on other evidence. They point, for example to UNICOR's 2000 Annual Report, which states that UNICOR had $403,625,000 in total liabilities and "United States Government equity" during that year. We find this reference to be legally irrelevant. UNICOR is a corporation and has few options about how it structures a balance sheet. Plaintiffs do not contend that this "equity" is in any way traceable to appropriated funds. It can only mean that, in this non-stockholder corporation, net value belongs to the government, acting through the corporation.

Plaintiffs also point to the fact that, pursuant to Public Law 100–690, UNICOR borrowed $20,000,000 from the United States Treasury for use in construction of plant facilities and equipment purchase. An appropriation is very different from a loan,

however, which must be repaid. Indeed, as defendant points out, House Report 101–681(I), which accompanied the authorization, reflects Congress' understanding that "FPI is self-sufficient and does not receive any appropriation." H.R. REP. No. 101–681(I), at 141 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6547.

Plaintiffs also rely on the fact that, unlike other NAFIs, UNICOR's enabling statutes do not explicitly prohibit the use of appropriated funds for their operation. *Compare* 10 U.S.C. §§ 4779(b) and 9779(b) *with* 18 U.S.C. § 4126. The most recent expression by the Federal Circuit on this subject, however, *Furash,* 252 F.3d at 1340, rejects this fact as dispositive. That decision also rejects the contention that segregated accounts within Treasury constitute "appropriated funds." *Id.* at 1341. Thus, while it is true that UNICOR's proceeds are deposited into the Treasury,[1] this fact does not change the character of those funds. They belong to the corporation and are distinct from general revenues.

Nor does the reference to appropriated funds in UNICOR's enabling statute carry the significance plaintiffs suggest. They point to the following language:

(d) Accounts of all receipts and disbursements of the corporation shall be rendered to the General Accounting Office for settlement and adjustment, as required by the Comptroller General.

(e) Such accounting shall include all fiscal transactions of the corporation, whether involving *appropriated moneys,* capital, or receipts from other sources.

18 U.S.C. § 4126 (emphasis added). Subsection (e) must be read in conjunction with subsection (d), however, which directs that all receipts and accounts of the corporation be submitted to the General Accounting Office for settlement and adjustment. In this context, the accounting must

---

1. Section 4126, entitled "Prison Industries Fund; use and settlement of accounts," provides in pertinent part:

(a) All moneys under the control of Federal Prison Industries, or received from the sale of the products or by-products of such Industries, or for the services of federal prisoners, shall be

deposited or covered into the Treasury of the United States to the credit of the Prison Industries Fund and withdrawn therefrom only pursuant to accountable warrants or certificates of settlement issued by the General Accounting Office.

take into consideration all fiscal transactions of the corporation, including all monies received, irrespective of source. The corporation can receive funds from numerous sources, including agencies which do receive appropriated monies. Hence the possibility that its transactions might involve "appropriated moneys," albeit appropriated to other entities. The question is whether Congress contemplated appropriating funds *to* UNICOR, not whether it is the indirect recipient of other agencies' appropriated funds.

Finally, plaintiffs cite 31 U.S.C. § 9104, entitled "Congressional action on budgets of wholly owned Government corporations," to support their point that the statutes anticipate that UNICOR can receive appropriated funds. Section 9104 states that Congress shall make "necessary appropriations authorized by law" for wholly owned government corporations. § 9104(a)(2). We view this reference, applicable to any government corporation, as too general to shed any light on what Congress intended with respect to this particular corporation.

The best indication of Congress' expectations of potential liability to the Treasury for UNICOR's actions is the corporation's own statutory provisions, beginning with 18 U.S.C. § 4126, which directs the Prison Industries Fund—not the Treasury in general—to receive all UNICOR monies.[2] Defendant also argues that the legislative history behind that section, as well as all subsequent congressional reports, indicates a strong sentiment in Congress that UNICOR be totally self-supporting. We agree. For instance, when Congress amended the Act of June 23, 1934 to employ the Prison Industries Fund in paying for training prisoners in various trades and occupations, the House Report

accompanying the amendment noted that funding for the training would be provided by UNICOR "without the necessity for appropriations by the Congress and without additional cost to the taxpayer." H.R. REP. No. 80–1653, at 1 (1948), *reprinted in* 1948 U.S.C.C.A.N. 1525, 1526. When UNICOR's legislation was subsequently amended to apply to military prisoners, the House Report accompanying the amendments stated that no public funds were involved. H.R. REP. No. 80–2387, at 1 (1948), *reprinted in* 1948 U.S.C.C.A.N. 2190. As mentioned before, House Report 101–681(I), accompanying the Crime Control Act of 1990, notes that UNICOR "is self-sufficient and does not receive any appropriation." H.R. REP. No. 101–681(I), at 141 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6547; *see also* H.R. REP. No. 106–1048 (2001), 2001 WL 67919 ("[t]he FPI program is entirely self-sufficient—no taxpayer monies are used to operate it"); S. REP. No. 107–42 (2001), 2001 WL 819868 ("UNICOR is a self-supporting revolving fund the resources of which are derived from sales of its products"); S. REP. No. 103–105 (1993), 1993 WL 324670 ("Federal Prison Industries, Inc., is entirely self-sustaining"); S. REP. No. 102–331 (1992), 1992 WL 231607 ("Federal Prison Industries, Inc., is entirely self-sustaining"); 60 Comp. Gen. 323 (1981) ("The Prison Industries Fund originated with appropriated funds derived from the seminal programs at the Atlanta and Leavenworth penitentiaries. No direct appropriations were again made to the fund, which became self-supporting soon after its creation").

Limitations on UNICOR's administrative expenses, found in various appropriation acts, *see, e.g.,* Pub.L. No. 100–459, 102 Stat. 2186 (HR 4782) (1988); H.R. REP. No. 104–676 (1996), 1996 WL 405998; H.R. REP. No. 102–709 (1992), 1992 WL 198586, do not com-

---

**2.** We decline to attach significance to the language in other decisions indicating that, even though FPI is self-sufficient, a judgment against it "would expend itself on the public treasury," *Sprouse, v. Fed. Prison Indus., Inc.,* 480 F.2d 1 (5th Cir.1973) (quoting *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)), and that "any judgment in [the plaintiff's] favor would require FPI to pay damages directly from the public treasury." *Galvan v. Fed. Prison Indus., Inc.,* 199 F.3d 461, 463 (D.C.Cir.1999). *Sprouse* dismissed an FLSA (at the time not ap-

plicable to federal employees) suit against UNICOR. *Galvan* was an action under the False Claims Act. Both courts held that the suits essentially were against the United States and that the United States had not, insofar as relevant there, waived sovereign immunity. The issue in those decisions was not the one resolved here. Although their fair inference is inconsistent with this decision, we view the relevant language as *dicta,* and, in any event believe it to be inaccurate.

pel a different result. The limitation provision found in Public Law 100–459, for example, authorizes UNICOR to use "the funds of the corporation" for various expenses. The provision mentions nothing about appropriating taxpayer dollars for those expenses.

Moreover, in 1988, Congress enacted 18 U.S.C. § 4129, which allowed FPI to borrow funds from the United States Treasury for the construction and operation of UNICOR facilities. 18 U.S.C. § 4129 (1988). This grant of authority was motivated by "congressional intent that Federal Prison Industries be self-sustaining." 134 CONG. REC. 2514 (1988).

Separate discussion is warranted as to Public Law 100–459's heading "FEDERAL PRISON SYSTEM SALARIES AND EXPENSES," which contains the following language:

> For expenses necessary for the administration, operation, and maintenance of Federal penal and correctional institutions, including purchase ... and hire of law enforcement and passenger motor vehicles; $953,012,000: "42 U.S.C. § 250a" Provided, That [sic] there may be transferred to the Health Resources and Services Administration such amounts as may be necessary, in the discretion of the Attorney General, for direct expenditures by that Administration for medical relief for inmates of Federal penal and correctional institutions: Provided further, That uniforms may be purchased without regard to the general purchase price limitation for the current fiscal year: Provided further, That of the amount appropriated under this heading, $4,204,000 shall be for "Federal Prison Industries" to replace equipment destroyed during the Mariel Cuban disturbances.

The last provision prompted the court to ask for additional briefing. After considering the legislation more carefully, however, we agree with the government that it does not undercut the preceding analysis.

Under this section, the government appropriated over $953 million to the Bureau of Prisons, which administers the "Federal Prison System," to direct and maintain correctional institutions. The FPI Annual Reports for 1988 and 1989, as well as affidavits

from pertinent officials employed by FPI and the Bureau, indicate that Congress directed the Bureau to use $4.2 million of the appropriated funds to reimburse FPI for losses incurred during the Mariel Cuban disturbances of November 1987. *See* Declarations of Mr. Motl and Mr. Newport, located in defendant's appendix to its supplemental brief at 98, 125. The reports mention the Mariel disturbances, list the $4.2 million under UNICOR's "current assets," and identify that sum as "reimbursements" from the Bureau. *See* FPI 1988 Annual Report at 19, 24. Congress, in other words, appropriated the money to the Bureau—not UNICOR. As the Conference Report for Public Law 100–459 confirms, the $4.2 million was to go towards the "replacement of Federal Prison Industry equipment destroyed during the Mariel Cuban disturbances." H.R. CONF. REP. No. 100–979, at 31 (1988).

In sum, we think the evidence is clear that UNICOR is a NAFI and that Congress has clearly indicated an intent to keep its financial obligations completely separate from those of the Treasury generally.

This does not, however, end the inquiry. As plaintiffs point out, Congress can further make it clear that, even though the nonappropriated fund exception might otherwise apply, the Treasury is nevertheless accessible to a recovery with respect to a particular type of claim. The Tucker Act itself, for example, has been amended so that "an express or implied contract with [Armed Forces] ... Exchanges ... shall be considered an express or implied contract with the United States." 28 U.S.C. 1491(a)(1).

Such an exception also operated in *El-Sheikh v. United States,* 177 F.3d 1321 (Fed. Cir.1999), upon which plaintiff heavily relies. The Federal Circuit there held that the NAFI exception does not apply:

> "where Congress has made special provisions," or where Congress has otherwise indicated by "special legislation." For in that situation, Congress necessarily intended to waive the bar of sovereign immunity.
>
> The waiver of sovereign immunity that Congress provided in extending the Fair Labor Standards Act to NAFI employees,

thereby permitting them to sue the United States as their employer, met this standard, and the non-appropriated funds doctrine is inapplicable here.

*Id.* at 1324–25 (citations omitted) (quoting *Cosme Nieves v. Deshler,* 786 F.2d 445, 449 (1st Cir.1986), and *United States v. Hopkins,* 427 U.S. 123, 127, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976)). In *El–Sheikh,* an employee sued the United States under the FLSA for overtime he allegedly failed to receive during his employment at an Air Force officers' club. The Federal Circuit characterized the club as a NAFI. The court nevertheless found that it had jurisdiction over plaintiff's suit because of specific language in the FLSA exposing the United States to overtime pay claims brought by employees of a "nonappropriated fund instrumentality under the jurisdiction of the Armed Forces." 177 F.3d at 1323 (quoting 29 U.S.C. § 203(e)(2)). Such an individual can recover damages against his employer in a "court of competent jurisdiction." 29 U.S.C. § 216(b).

As conceded at oral argument, however, these particular plaintiffs are asserting a claim under FEPA, not FLSA. More relevant, then, are the decisions in *Taylor v. United States,* 49 Fed.Cl. 598 (2001), *Moore v. United States,* 21 Cl.Ct. 537 (1990), and *Abbott v. United States,* 125 Ct.Cl. 330, 112 F.Supp. 801 (1953), all Title 5 pay claims dismissed for lack of jurisdiction over claims against NAFIs. *See also Siegal v. United States,* 38 Fed.Cl. 386 (1997). In short, there is no expression in Title 5 comparable to either the express application of FLSA to NAFIs, or to the extension in the Tucker Act of contract jurisdiction to claims against NAFIs.

### CONCLUSION

Defendant's motion to dismiss is granted. There being no just cause for delay, all claims of the plaintiffs named in the attached list are dismissed for lack of jurisdiction pursuant to RCFC 54(b). In addition, the UNICOR claims of plaintiff Joseph Ludgate are dismissed. He remains a plaintiff with re-

spect to his employment by the Bureau. No costs. Judgment accordingly.

