**CORE CONCEPTS OF FLORIDA, INCORPORATED, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 02–5172.**

United States Court of Appeals, Federal Circuit.

DECIDED: April 30, 2003.

Cyrus E. Phillips, IV, of Washington, DC, argued for plaintiff-appellant.

Kyle E. Chadwick, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, argued for defendant-appellee. With him on the brief were David M. Cohen, Director; and Deborah A. Bynum, Assistant Director. Of counsel on the brief was Mary E. Carney, Assistant General Counsel, Federal Bureau of Prisons, of Washington, DC.

Before LOURIE, GAJARSA, and LINN, Circuit Judges.

LOURIE, Circuit Judge.

Core Concepts of Florida, Inc. appeals from the decision of the United States Court of Federal Claims dismissing its complaint under the Contract Disputes Act ("CDA") for lack of jurisdiction. *Core Concepts of Fla., Inc. v. United States,* No. 00–308C (Fed.Cl. Aug. 23, 2002). Because the non-appropriated funds doctrine bars the Court of Federal Claims from having jurisdiction over this case, we affirm.

## BACKGROUND

Federal Prison Industries ("FPI," also known by its trade name "UNICOR") is a government-owned corporation that was created in 1934 to provide work simulation programs and training opportunities for inmates of federal correctional facilities. Act of June 23, 1934, Pub. L. No. 73–461, 48 Stat. 1211 (codified as amended at 18 U.S.C. §§ 4121–4129 (2000)); *see* 28 C.F.R. § 345.11 (2003). On June 10, 1997, FPI awarded Core Concepts, a business that markets furniture and storage systems to federal agencies, a firm fixed-price services contract to support FPI's product sales to federal customers. By letter dated March 18, 1999, FPI notified Core Concepts that the contract would be terminated for convenience, effective April 18, 1999. Core Concepts submitted a termination settlement proposal, but the contracting officer issued a final decision denying recovery.

Core Concepts then filed suit against the United States in the Court of Federal Claims, seeking an equitable adjustment and money damages resulting from the contract termination. After certain breach of contract claims had been dismissed, the court granted the government's motion to dismiss Core Concepts' remaining claims for lack of jurisdiction. *Core Concepts,* slip op. at d. Relying on *Aaron v. United States,* 51 Fed.Cl. 690 (2002), as well as the statutes and legislative history cited by the parties, the court agreed with the government that Congress has declared that FPI is to operate without appropriated funds. *Core Concepts,* slip op. at c. Therefore, the court concluded, FPI is a non-appropriated fund instrumentality ("NAFI") and jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2000), is lacking. *Core Concepts,* slip op. at c. The court also noted that FPI is not listed in 28 U.S.C. § 1491(a)(1), which confers Tucker Act jurisdiction over contract claims involving certain NASA and military NAFIs. *Id.* Furthermore, the court held that the CDA does not provide a basis for jurisdiction over this

case, rejecting Core Concepts' argument that the CDA requires the government to pay judgments from the permanent indefinite judgment fund. *Id.* The court thus concluded that it lacked jurisdiction and dismissed Core Concepts' action.

Core Concepts timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Whether the Court of Federal Claims properly dismissed Core Concepts' complaint for lack of jurisdiction is a question of law that we review *de novo. Boyle v. United States,* 200 F.3d 1369, 1372 (Fed. Cir.2000).

 The Tucker Act confers upon the Court of Federal Claims jurisdiction with respect to claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (2000). The jurisdictional grant of the Tucker Act is limited, however, by the general requirement that judgments awarded against the government be paid out of appropriated funds. *Furash & Co. v. United States,* 252 F.3d 1336, 1339 (Fed. Cir.2001); *L'Enfant Plaza Props., Inc. v. United States,* 229 Ct.Cl. 278, 668 F.2d 1211, 1212 (1982); *see also* 28 U.S.C. § 2517 (2000) ("Except as provided by the Contract Disputes Act of 1978, every final judgment rendered by the United States Court of Federal Claims against the United States shall be paid out of any general

appropriation therefor. . . ."). Thus, absent some specific jurisdictional provision to the contrary, the Court of Federal Claims generally lacks jurisdiction over actions in which appropriated funds cannot be obligated.[1] *Furash,* 252 F.3d at 1339; *L'Enfant,* 668 F.2d at 1212.

 However, we have interpreted that jurisdictional requirement to mean that, when an issue arises under the non-appropriated funds doctrine, the Court of Federal Claims must exercise jurisdiction absent a "clear expression by Congress that it intended to separate the agency from general federal revenues." *Furash,* 252 F.3d at 1339. To establish jurisdiction, the plaintiff need not show that appropriated funds have actually been used for the agency's activities, but that "under the agency's authorizing legislation Congress could appropriate funds if necessary." *Id.* (quoting *L'Enfant,* 668 F.2d at 1212). In other words, Tucker Act jurisdiction exists unless there is a "firm indication by Congress that it intended to absolve the appropriated funds of the United States from liability for acts" of the agency. *Id.* (quoting *L'Enfant,* 668 F.2d at 1212).

On appeal, Core Concepts argues that the Court of Federal Claims erred in dismissing its complaint for lack of jurisdiction and contends that FPI is not a NAFI for several reasons. First, it argues that FPI's operating fund, the Prison Industries Fund, is considered to be an appropriation under the "special funds as appropriation" principle. Core Concepts cites decisions of the Comptroller General as

---

1. Congress has, however, vested the Court of Federal Claims with jurisdiction over actions involving contracts with military post exchanges and the exchange councils of NASA. 28 U.S.C. § 1491(a)(1) (2000) ("[A]n express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges,

Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States."); *see Furash,* 252 F.3d at 1339.

establishing that the Prison Industries Fund is a "continuing appropriation" and that FPI is therefore not a NAFI. In that vein, Core Concepts asserts that *Aaron,* in which the Court of Federal Claims held FPI to be a NAFI outside the jurisdictional grant of the Tucker Act, was wrongly decided. Second, Core Concepts argues that the Prison Industries Fund originally derived from appropriated funds and that Congress has not provided the requisite "firm indication" that appropriated funds were to be absolved from liability for FPI's actions. Third, Core Concepts asserts that all "revolving" funds, including the Prison Industries Fund, are appropriations in view of 31 U.S.C. §§ 701(2)(C) and 1101(2)(C) as well as the Appropriations Clause, U.S. Const. art. I, § 9, cl. 7. Finally, Core Concepts maintains that Tucker Act jurisdiction exists because under the CDA any judgment against the government would have to be paid from the permanent indefinite judgment fund and then reimbursed by FPI.

The government responds that the Court of Federal Claims properly dismissed Core Concepts' complaint for lack of jurisdiction. The government argues that FPI is a NAFI because, among other things, it functions as a self-sufficient corporation and does not receive any appropriations. Citing *Aaron,* the government maintains that FPI's enabling statute, which segregates FPI's monetary assets from the Treasury's general fund and does not authorize the appropriation of general receipts to FPI's account, provides the necessary "firm indication" that Congress intended to absolve appropriated funds from liability for FPI's actions. The government further argues that the Comptroller General's position that all "revolving" funds are appropriated funds is an overstatement and should be rejected by this court. In addition, the government contends that the Appropriations Clause of

the U.S. Constitution is simply a restriction on the executive branch's disbursing authority and does not distinguish between appropriated and non-appropriated funds held by the government. Finally, the government argues that 31 U.S.C. §§ 701(2)(C) and 1101(2)(C) are of "dubious relevance" to the Tucker Act and are expressly qualified as applying only "in [the] appropriate context."

■ We agree with the government that the Court of Federal Claims properly dismissed Core Concepts' complaint for lack of jurisdiction under the non-appropriated funds doctrine. To begin with, FPI does not operate with appropriated funds. It is a self-sufficient corporation whose funds are derived primarily from its product sales, and it receives no congressional appropriations. *Aaron,* 51 Fed.Cl. at 692; *see also El–Sheikh v. United States,* 177 F.3d 1321, 1322 (Fed.Cir.1999) ("[NAFIs] are federal government entities whose 'monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales.'" (second alteration in original) (citation omitted)). Core Concepts points out that, although FPI is self-sufficient, the Prison Industries Fund was derived from appropriated funds. Indeed, the Prison Industries Fund initially comprised funds transferred from the prison industries working capital fund, which itself was derived in part from appropriations made in 1918 and 1924 to support programs at the Atlanta and Leavenworth prisons. *Donation Under 40 U.S.C. § 484(j) of Surplus Personal Prop. of Fed. Prison Indus., Inc.,* 60 Comp. Gen. 323, 324–26, 1981 WL 22478 (1981). However, FPI repaid its initial funding soon after its inception in 1934 and has never received any appropriations from Congress since that time. *Id.* at 326. Although appropriations were made to FPI's predecessors, that fact is of no con-

sequence to our analysis under the non-appropriated funds doctrine: it says nothing of Congress's intentions concerning the funding of FPI's operations, which we discuss below, and it fails to satisfy the jurisdictional requirement of obligating appropriated funds to pay judgments against the government.

FPI's self-sufficiency as a corporation is not determinative of its NAFI status. More telling are Congress's intentions regarding the nature of FPI's funding, which can best be understood from FPI's enabling legislation. Specifically, 18 U.S.C. § 4126 provides in relevant part that:

(a) All moneys under the control of Federal Prison Industries, or received from the sale of the products or by-products of such Industries, or for the services of federal prisoners, shall be deposited or covered into the Treasury of the United States to the credit of the Prison Industries Fund and withdrawn therefrom only pursuant to accountable warrants or certificates of settlement issued by the General Accounting Office.

(b) All valid claims and obligations payable out of said fund shall be assumed by the corporation.

(c) The corporation, in accordance with the laws generally applicable to the expenditures of the several departments, agencies, and establishments of the Government, is authorized to employ the fund, and any earnings that may accrue to the corporation—

(1) as operating capital in performing the duties imposed by this chapter;

(2) in the lease, purchase, other acquisition, repair, alteration, erection, and maintenance of industrial buildings and equipment;

(3) in the vocational training of inmates without regard to their industrial or other assignments;

(4) in paying, under rules and regulations promulgated by the Attorney General, compensation to inmates employed in any industry, or performing outstanding services in institutional operations, and compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined.

18 U.S.C. § 4126(a)-(c) (2000). Although that statute does not, as Core Concepts points out, expressly prohibit Congress from appropriating funds to FPI, the absence of such a statement in an agency's enabling legislation is not dispositive of the agency's NAFI status. *Furash,* 252 F.3d at 1340. Instead, we must determine whether Congress has clearly expressed its intent that the agency, or the particular activity that gave rise to the dispute in question, is to be separated from general federal revenues. *Id.; Denkler v. United States,* 782 F.2d 1003, 1005 (Fed.Cir.1986).

We believe that Congress has expressed just that intent through FPI's enabling legislation. By directing that all monies under FPI's control be deposited into the U.S. Treasury to the credit of the Prison Industries Fund, § 4126 makes clear that FPI's funds are to be kept distinct from general federal revenues. *Aaron,* 51 Fed. Cl. at 693; *see Furash,* 252 F.3d at 1339–40 (holding that the Federal Housing Finance Board is a NAFI because its authorizing legislation provides a scheme whereby any surplus is credited to assessed banks rather than the Treasury's general fund, and any deficiency is made up by special assessments rather than appropriated funds). Notably, FPI's enabling legislation includes "no authorization of appropriations, such as is usually found in the statutory charters of governmental entities which may rely on such appropria-

tions in whole or in any part."[2] *Denkler,* 782 F.2d at 1005 (holding that the Federal Reserve Board of Governors is a NAFI because its enabling statute, which designates bank assessments as the source of funds and does not expressly authorize funds to be appropriated, provides a "clear expression" that Congress intended the agency to be separated from general federal revenues). Moreover, several congressional reports relating to FPI's operations provide evidence of Congress's own understanding that FPI is to operate entirely without appropriated funds. *E.g.,* H.R.Rep. No. 101–681(I), at 141 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6547 (noting that FPI "is self-sufficient and does not receive any appropriation"); *see also Aaron,* 51 Fed.Cl. at 693 (collecting similar statements from other congressional reports). In light of FPI's enabling legislation and legislative history, we conclude that Congress has clearly expressed its intention that FPI's funds are to be segregated from general federal revenues, thereby providing a "firm indication" that it intended to absolve appropriated funds from liability for FPI's actions. Accordingly, we agree with the Court of Federal Claims' conclusion that FPI is a NAFI for which the United States is not financially answerable in that court.

Core Concepts' other arguments to the contrary are unpersuasive. Core Concepts cites decisions of the Comptroller General for the proposition that the Prison Industries Fund is itself an appropriation. Although the Comptroller General has characterized the Prison Industries Fund as a "continuing appropriation," that position is inapposite to the jurisdictional question before us. In *Donation Under 40 U.S.C. § 484(j) of Surplus Personal Property of Federal Prison Industries, Inc.,* 60 Comp. Gen. 323, 1981 WL 22478 (1981), the Comptroller General held that § 4126 makes the revenues received from sales of FPI's products a "continuing appropriation" by authorizing their deposit into a specific account to be used for FPI's operations. *Id.* at 326. That view, however, is inconsistent with our case law concerning Tucker Act jurisdiction: under the non-appropriated funds doctrine, FPI is a NAFI precisely because § 4126 authorizes the deposit of FPI's revenues into a specific account from which claims and obligations may be paid, rather than the Treasury's general fund. That provision indicates that Congress intended to keep FPI's funds separate from general federal revenues. Moreover, the Comptroller General's view of what constitutes an appropriation appeared in the context of interpreting particular regulations. *E.g., id.* at 327 (holding that the Prison Industries Fund is not a non-appropriated fund within the meaning of 41 C.F.R. § 101–44.001–3, a regulation defining donable property). It is not applicable to the separate determination whether general funds of the Treasury may be obligated, and hence whether jurisdiction exists, for a claim involving a contract to which FPI was a party. Accordingly, we decline to adopt the Comptroller General's characterization of the Prison Industries Fund as an appropriation in the present context of determining whether jurisdiction exists under the Tucker Act.

Core Concepts also urges us to adopt the view of the General Accounting

2. In contrast, Congress had expressly authorized appropriations for the prison industries working capital fund, the operating fund of the prison industries program in existence before FPI was established as a government corporation. Act of May 27, 1930, Pub. L. No. 71–271, § 5, 46 Stat. 391, 392 ("There are authorized to be appropriated such additional sums as may from time to time be necessary to carry out the provisions of this Act.").

Office ("GAO") that all "revolving" funds, including the Prison Industries Fund, are appropriations. We decline to do so. According to the GAO, a revolving fund—*i.e.,* a single account to which receipts are credited and from which expenditures are made—is composed of appropriated funds that are available for expenditure without further congressional action. IV U.S. Gen. Acct. Office, *Principles of Federal Appropriations Law* 15–83, –97 (2d ed. 2001) ("*Federal Appropriations Law*"). The authorities cited by the GAO to support that position, however, are not applicable to the non-appropriated funds doctrine in the same sense that they are applicable to federal appropriations law. First, the Miscellaneous Receipts Act requires that money received by the government be deposited into the general fund of the Treasury. *See* 31 U.S.C. § 3302(b) (2000). The Prison Industries Fund, however, is not subject to that requirement in that it retains receipts for FPI, rather than for the government generally, and deposits those receipts into a special account, rather than into the Treasury's general fund. *See Federal Appropriations Law, supra,* at 15–82. The Miscellaneous Receipts Act thus does not establish that the Prison Industries Fund is an appropriation of general funds. Secondly, the Appropriations Clause provides that: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by law…." U.S. Const. art. I, § 9, cl. 7. It imposes "a restriction upon the disbursing authority of the Executive [Branch]," *Cincinnati Soap Co. v. United States,* 301 U.S. 308, 321, 57 S.Ct. 764, 81 L.Ed. 1122 (1937), but again does not by itself transform FPI's funds, which reside in an independent account within the Treasury, into general funds of the United States that can be used to pay judgments. Third, although 31 U.S.C. §§ 701(2)(C) and 1101(2)(C) define the term "appropria-tions" to include, in addition to funds provided directly by Congress, "other authority making amounts available for obligation or expenditure," that broad definition expressly applies only to chapters 7 and 11 of U.S.C. title 31 and only "in appropriate context." 31 U.S.C. §§ 701(2)(C), 1101(2)(C) (2000). It is not germane to a determination of jurisdiction under the Tucker Act. Thus, we conclude that Core Concepts' reliance on the GAO's view that all revolving funds are appropriations is misplaced, for it does not change the conclusion that a judgment against FPI would obligate only FPI's funds, which are, and which Congress intended to be, distinct from the Treasury's general funds.

 Finally, Core Concepts argues that the CDA provides jurisdiction under the Tucker Act in this action because any judgment against the United States would have to be paid from the permanent indefinite judgment fund, *see* 31 U.S.C. § 1304 (2000), and then reimbursed by FPI. However, we have previously held that the CDA does not extend the Court of Federal Claims' jurisdiction to actions involving NAFIs like FPI. In *Furash & Co. v. United States,* 252 F.3d 1336 (Fed.Cir.2001), we recognized that the non-appropriated funds doctrine applies to the CDA in the same way that it applies to the Tucker Act. *Id.* at 1343. Thus, with respect to NAFIs, lack of jurisdiction under the Tucker Act amounts to lack of jurisdiction under the CDA. Moreover, we explained that the CDA's reimbursement provision, 41 U.S.C. § 612(c) (2000), applies only to "agencies whose appropriations were used for the contract" and not to NAFIs other than the military exchanges and NASA exchange councils specifically identified in the Tucker Act. *Furash,* 252 F.3d at 1343. Having determined FPI to be a NAFI for which the United States is not financially answerable in the Court of Federal Claims for the

reasons discussed above, we thus conclude that the CDA does not confer jurisdiction over this action.

## CONCLUSION

The Court of Federal Claims correctly concluded that FPI is a NAFI whose contracts are not expressly deemed contracts with the United States under the Tucker Act and that it therefore lacked jurisdiction over Core Concepts' complaint. Accordingly, the decision of the Court of Federal Claims is

*AFFIRMED.*